KELLY A. FLINT, Plaintiff-Appellant, v. COURT APPOINTED SPECIAL ADVOCATES OF DU PAGE COUNTY, INC., a/k/a CASA of Du Page County, *et al.*, Defendants-Appellees.

Second District    Nos. 2—95—1621, 2—96—0179 cons.

Opinion filed December 3, 1996.

Robert H. Anderson, of Law Office of Robert H. Anderson, of Chicago, for appellant.

J. Stephen Poor and Condon A. McGlothlen, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee National Court Appointed Special Advocate Association.

Robert L. Reeb, of Keck, Mahin & Cate, and McBride, Baker & Coles, both of Chicago, for appellees Court Appointed Special Advocates of Du Page County and Briar Picchietti.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Kelly Flint, appeals from the order of the circuit court of Du Page County granting summary judgment in favor of defendants, Court Appointed Special Advocates of Du Page County, Inc. (CASA of Du Page County), and Briar Picchietti, on her claims for breach of contract and tortious interference with an existing contract. She also appeals from the trial court's order dismissing her claim against the defendant, the National Court Appointed Special Advocate Association (NCASAA), for lack of personal jurisdiction. We affirm in part, reverse in part, and remand for further proceedings.

NCASAA is a not-for-profit corporation that provides technical assistance and training to CASA programs throughout the United States. NCASAA also disburses funds it receives from the United States Department of Justice, Office of Juvenile Justice and Delinquency Prevention (the DOJ), in the form of grants to local CASA programs. Local CASA programs provide trained community volunteers to advocate for the best interests of children who come into the court system, primarily as a result of abuse or neglect. Local CASA programs recruit, screen, train, and supervise these volunteers to either serve as guardians *ad litem* for children, assist attorney guardians *ad litem* in their representation, or serve as independent third-party "Friends of the Court." As such, local CASA programs are intended to serve the overall public interest in the welfare of children. Local CASA programs are independent organizations that become members of NCASAA in order to enjoy the benefits of membership. As a condition of NCASAA membership, local CASA

programs agree to abide by NCASAA's membership standards. NCASAA offers its members various support services, which may include training, technical assistance, the right to use certain trademarks and copyrighted materials, and the award and administration of DOJ grant funds to qualifying applicants.

NCASAA members include numerous local CASA programs in all 50 states. In Illinois, there are one state and 20 local CASA programs that are NCASAA members. CASA of Du Page County is one of the local CASA programs in Illinois that is a NCASAA member. CASA of Du Page County is a not-for-profit Illinois corporation. As such, it is dependent upon charitable contributions for its operation, and NCASAA grants are its only source of substantial and continued funding.

Picchietti has been a member of CASA of Du Page County's board of directors (the Board) since at least January 1, 1994. During 1995, Picchietti was the president of the Board.

During 1994, the plaintiff served as CASA of Du Page County's executive director. On April 27, 1994, CASA of Du Page County entered into a contract with the plaintiff under which the plaintiff would serve as executive director on an independent contractor basis (the original contract). The original contract was for the period beginning January 1, 1994, and ending December 31, 1994. The original contract provides, in pertinent part:

> "[The plaintiff] is to receive as compensation an amount equal to fifty (50) percent of the total gross receipts donated, given and/or granted to CASA of Du Page County[ ] for the period beginning January 1, 1994 and ending December 31, 1994, up to an amount not to exceed $50,000.00."

In March 1994, the plaintiff applied for a NCASAA grant on behalf of CASA of Du Page County. On July 20, 1994, NCASAA entered into an agreement to grant CASA of Du Page County $75,000, payable in quarterly installments over the period beginning July 1, 1994, and ending June 30, 1996 (the grant). By entering into the agreement, CASA of Du Page County accepted the terms and conditions of the grant. Under the agreement, NCASAA may terminate the grant and cease making disbursements at any time during the grant period for violations of the grant's terms and conditions.

At a Board meeting on October 6, 1994, the plaintiff presented a proposed payout schedule that provided for payments that she believed CASA of Du Page County owed her under the original contract. The Board approved the idea of a payout schedule for the plaintiff. However, the Board had CASA of Du Page County's general counsel, Maria Jensen, review the proposed payout schedule. After

reviewing the proposed payout schedule, Jensen prepared an amendment to the original contract (the amendment to the contract).

At a Board meeting on November 18, 1994, the Board reviewed and approved the amendment to the contract. Peter S. McCabe, who was the president of the Board at that time, signed the amendment to the contract on behalf of CASA of Du Page County, and the plaintiff signed on her own behalf. The amendment to the contract adds the following language to the compensation provisions of the original contract:

> "If [the plaintiff's] total compensation from CASA [of Du Page County] for 1994 does not total $50,000.00, the parties agree, that [the plaintiff] will be entitled to an additional $16,984.00 *** from the sums actually received from the NCASAA grant awarded to CASA [of Du Page County] in 1994, providing for distributions through January, 1996."

The amendment to the contract then provides for a payout schedule through 1995 and ending in January 1996 for payouts totalling $16,984, the amount sought in the plaintiff's amended complaint. Finally, the amendment to the contract provides that "[r]eimbursement to [the plaintiff] pursuant to the aforesaid payment schedule is subject to the *** condition that the sums are actually received, as set forth in the NCASAA Grant."

The substantial difference between the plaintiff's proposed payout schedule and the amendment to the contract drafted by Jensen was the addition of the language that the payments to the plaintiff during 1995 and 1996 were to be made from funds "actually received" from the NCASAA grant awarded in 1994. Prior to executing the amendment to the contract, McCabe informed the plaintiff that the terms "actually received" from the NCASAA grant were added by CASA of Du Page County to make clear that CASA of Du Page County would only be obligated under the payout schedule contained in the amendment to the contract to pay her from funds actually received from NCASAA pursuant to the grant. He also informed her that the language was added to make clear that CASA of Du Page County was not obligated to pay her should it lose the NCASAA grant for any reason, as CASA of Du Page County had no other source of continued and substantial funding from which to pay her.

On December 1, 1994, the plaintiff submitted a letter to CASA of Du Page County, advising that she would not be renewing her contract to serve as executive director for 1995. At the time McCabe signed the amendment to the contract on behalf of CASA of Du Page County, neither he nor the Board was aware that the plaintiff would not serve as CASA of Du Page County's executive director during

1995. In addition, neither he nor the Board knew that NCASAA would prohibit CASA of Du Page County from paying the plaintiff pursuant to the amendment to the contract from NCASAA funds if the plaintiff were no longer providing services to CASA of Du Page County.

During the period beginning July 1, 1994, and ending December 31, 1994, CASA of Du Page County received $30,000 from NCASAA pursuant to the grant. During 1994, CASA of Du Page County received $11,149.10 from all other grants, contributions, and fund raisers. During 1994, CASA of Du Page County paid the plaintiff $26,090.55 as compensation. Of this amount, $20,516.00 was paid from funds received from NCASAA in 1994 pursuant to the grant. The plaintiff has performed no services in any paid capacity for CASA of Du Page County since December 31, 1994.

CASA of Du Page County had no executive director during January 1995. On or about January 13, 1995, CASA of Du Page County received a $7,500 grant disbursement check from NCASAA, which was deposited into its checking account.

On January 20, 1995, in order to determine how to prepare a request for quarterly grant disbursement from NCASAA, Picchietti contacted Sue Shecket, NCASAA's grant administrator. Picchietti asked Shecket how to prepare the request for quarterly grant disbursement from NCASAA and how to indicate CASA of Du Page County's payout obligation to the plaintiff under the amendment to the contract. Picchietti informed Shecket of the following: (1) that the plaintiff was no longer performing services on CASA of Du Page County's behalf; (2) that the plaintiff had served as CASA of Du Page County's executive director on an independent contractor basis, with compensation based on a percentage of the total gross receipts donated, given, and/or granted to CASA of Du Page County for the period of her tenure; and (3) that, under the amendment to the contract, CASA of Du Page County was to pay the plaintiff a portion of the funds that CASA of Du Page County would receive from NCASAA under the grant during 1995 and 1996.

Shecket informed Picchietti that NCASAA prohibited CASA of Du Page County from paying any portion of the grant funds that would be distributed to CASA of Du Page County during 1995 and 1996 as compensation to the plaintiff when she was no longer performing services for CASA of Du Page County. Shecket also informed Picchietti that if CASA of Du Page County paid any portion of the grant funds that would be distributed during 1995 and 1996 to the plaintiff while she was not performing services on behalf of CASA of Du Page County, NCASAA would rescind the grant and cease payments thereunder.

Following her conversation with Picchietti, Shecket discussed the situation with Michael Piraino, NCASAA's chief executive officer. As a result of their discussion, Shecket sent a letter to Picchietti in which she clarified the requirements and limitations on the use of the remaining NCASAA grant funds, stating that "[r]emaining grant funding may be used to compensate only those personnel that are currently performing activities directly related to the purposes of the grant."

After Picchietti's telephone conversation with Shecket and after receiving Shecket's letter, Picchietti conferred with the executive committee of the Board (the Executive Committee). The Executive Committee agreed that, given NCASAA's position, CASA of Du Page County could not pay the plaintiff under the amendment to the contract.

On January 21, 1995, the plaintiff sent a letter to CASA of Du-Page County requesting that she be paid the $3,750 due her under the payout schedule in the amendment to the contract. On January 30, 1995, she sent a letter to CASA of Du Page County demanding that she be paid the $3,750.

On March 2, 1995, CASA of Du Page County responded to the plaintiff's demands for payment through its general counsel, Dianne Carroll. In that letter, CASA of Du Page County informed the plaintiff that it was unable to comply with her request due to the restrictions that NCASAA placed upon the use of the grant funds. CASA of Du Page County further informed the plaintiff that the amendment to the contract was predicated upon a mutual mistake of fact and that CASA of Du Page County's performance thereunder was discharged because of impossibility of performance.

On March 22, 1995, the plaintiff filed a three-count complaint against CASA of Du Page County, Picchietti, and NCASAA. Count I was a claim for breach of contract against CASA of Du Page County; count II was a claim for tortious interference with an existing contract against Picchietti; and count III was a claim against NCASAA, alleging that the plaintiff had been injured by NCASAA's failure to carry through on its promise to make quarterly payments to CASA of Du Page County through June 1996.

On March 31, 1995, CASA of Du Page County filed an answer to the complaint, admitting that the parties entered into the amendment to the contract as alleged in the complaint, but alleging the affirmative defenses of impossibility of performance and mistake of fact.

On April 24, 1995, Picchietti filed a motion to strike and dismiss count II of the plaintiff's complaint and the *ad damnum* clause of count I of the complaint insofar as it related to her.

On May 4, 1995, NCASAA was served with the summons and complaint.

On May 31, 1995, following a hearing on Picchietti's motion to strike and dismiss, the trial court entered an order, striking Picchietti from the *ad damnum* clause of count I and dismissing count II of the plaintiff's complaint.

On June 5, 1995, NCASAA entered a special and limited appearance in this case. NCASAA filed a motion to quash service of the summons and to dismiss count III of the complaint for lack of personal jurisdiction. NCASAA argued that service of the summons must be quashed because the summons was served more than 30 days after the date of its issue, in violation of Supreme Court Rule 102(b) (134 Ill. 2d R. 102(b)). In addition, NCASAA argued that count III of the complaint must be dismissed because the trial court lacks personal jurisdiction over NCASAA, under either the Illinois long-arm statute or the federal and state constitutions. In support of its motion, NCASAA filed a memorandum of law and an affidavit of Piraino.

On June 20, 1995, the plaintiff filed an amended complaint. In count II of the amended complaint, the plaintiff alleged that Picchietti intentionally and maliciously interfered with the contract between the plaintiff and CASA of Du Page County and induced CASA of Du Page County to breach the contract.

On July 13, 1995, Picchietti filed an answer to the plaintiff's amended complaint and her affirmative defenses, which included impossibility of performance, mistake of fact, and corporate officer qualified privilege.

On July 25, 1995, the trial court held a hearing on NCASAA's motion to quash service of the summons and to dismiss the complaint for lack of personal jurisdiction. The trial court granted NCASAA's motion to quash service of the summons, ruled that it lacked jurisdiction to decide NCASAA's motion to dismiss because NCASAA had not been properly served, and granted the plaintiff leave to attempt to properly serve NCASAA.

On August 2, 1995, CASA of Du Page County and Picchietti filed a motion for summary judgment. In support of their motion, they filed several affidavits, including an affidavit of Piraino. In his affidavit, Piraino stated:

> "[U]nder the terms of the agreement between NCASAA and the DOJ governing the distribution of DOJ funds to NCASAA, as well as under the pertinent DOJ regulations, the subgrants NCASAA distributes to local CASA programs can only be used to reimburse activities occurring during the Grant period. For this reason,

NCASAA is prohibited from allowing the funds which will be disbursed under the Grant to be disbursed by CASA of Du Page County to [the plaintiff] while she is no longer rendering services to CASA of Du Page County.

*** For the foregoing reasons, NCASAA has prohibited CASA of Du Page County from paying any portion of the Grant funds which will be distributed to CASA of Du Page County during 1995 and 1996 as compensation to [the plaintiff] while she is no longer performing services as the Executive Director of CASA of Du Page County. If CASA of Du Page County pays any portion of the Grant funds which will be distributed during 1995 and 1996 to [the plaintiff] while she is not performing services on behalf of CASA of Du Page County, NCASAA will rescind the Grant and cease payments thereunder to CASA of Du Page County."

On August 3, 1995, the plaintiff filed a motion for summary judgment against CASA of Du Page County.

On August 7, 1995, the plaintiff served NCASAA with a summons and amended complaint. On August 9, 1995, NCASAA filed a motion to dismiss count III of the amended complaint for lack of personal jurisdiction.

On August 28, 1995, the trial court heard arguments on the plaintiff's motion for summary judgment against CASA of Du Page County and on CASA of Du Page County and Picchietti's motion for summary judgment against the plaintiff. Following the arguments of counsel, the trial court granted summary judgment in favor of CASA of Du Page County and Picchietti and against the plaintiff on counts I and II of the plaintiff's amended complaint.

As to the claim against CASA of Du Page County, the trial court found that there was no consideration for the amendment to the contract and that if CASA of Du Page County brought a counterclaim for rescission, the court would be compelled to rescind the contract and return the parties to the status quo as of November 18, 1994. As to the issue of impossibility of performance, the trial court found that, if CASA of Du Page County paid any NCASAA grant funds to the plaintiff during 1995 and 1996, while the plaintiff was no longer working for CASA of Du Page County, NCASAA would not disburse any additional funds to CASA of Du Page County and CASA of Du Page County would not be able to pay any additional funds to the plaintiff. As to the issue of mutual mistake of fact, the trial court found that the parties did not contemplate that CASA of Du Page County's performance under the amendment to the contract would bring about the destruction of the NCASAA grant, which was CASA of Du Page County's means of meeting its obligations under the amendment to the contract. The trial court also found that CASA of

Du Page County did not owe the plaintiff anything further under the original contract.

In granting summary judgment in favor of Picchietti on the plaintiff's claim for tortious interference with an existing contract, the trial court found that, in contacting NCASAA, Picchietti acted in her capacity as president of the Board of a not-for-profit corporation. In addition, the trial court found that, even if Picchietti had an improper motive in contacting NCASAA, Picchietti could not be held liable for tortious interference with an existing contract because the amendment to the contract was unenforceable.

The plaintiff filed a motion to reconsider, arguing that the trial court erred in holding: (1) that no consideration existed for the amendment to the contract; (2) that CASA of Du Page County did not owe her anything further under the original contract; (3) that, as to the amendment to the contract, the defenses of mutual mistake of material fact and impossibility of performance would have been available to CASA of Du Page County; and (4) that no genuine issue of material fact existed regarding her claim against Picchietti.

On November 22, 1995, the trial court granted, with prejudice, NCASAA's motion to dismiss count III of the plaintiff's amended complaint for lack of personal jurisdiction. The trial court's order contained language allowing appeal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). The plaintiff filed a timely notice of appeal from the order granting NCASAA's motion to dismiss.

On January 19, 1996, the trial court denied the plaintiff's motion for reconsideration of its August 28, 1995, order granting summary judgment in favor of CASA of Du Page County and Picchietti. The plaintiff filed a timely notice of appeal from the August 28, 1995, and January 19, 1996, orders. This court allowed the plaintiff's motion to consolidate the appeals.

We will begin our analysis by addressing the issue of whether the trial court properly granted summary judgment in favor of CASA of Du Page County. Since the purpose of a summary judgment proceeding is to determine whether a genuine issue of triable fact exists (*Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)), a motion for summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2—1005(c) (West 1994); see also *Gatlin v. Ruder*, 137 Ill. 2d 284, 293 (1990)). While the use of the summary judgment procedure is to be encouraged in the interest of the prompt disposition of lawsuits, it is a drastic means of disposing of litigation and, therefore, it should be al-

lowed only when a party's right to it is clear and free from doubt. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). In determining the existence of a genuine issue of material fact, the court must construe the evidence strictly against the moving party and liberally in favor of the nonmoving party. *Gatlin*, 137 Ill. 2d at 293. While a party opposing a motion for summary judgment need not prove his case at that preliminary stage, he is required to present some factual basis that would arguably entitle him to a judgment in his favor. *Fuentes v. Lear Siegler, Inc.*, 174 Ill. App. 3d 864, 866 (1988). If a plaintiff fails to establish an element of the cause of action, summary judgment in favor of the defendant is proper. *Pyne*, 129 Ill. 2d at 358.

An order granting summary judgment will be reversed if the pleadings, depositions, admissions, exhibits, and affidavits on file show that a genuine issue of material fact existed or if the judgment was incorrect as a matter of law. *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471 (1991). The disposition of a summary judgment motion is not discretionary and the standard of review is *de novo*. *Quinton*, 221 Ill. App. 3d at 471.

In granting summary judgment in favor of CASA of Du Page County on the plaintiff's claim for breach of contract, the trial court ruled that the amendment to the contract was unenforceable in that it was not supported by consideration. The trial court found that the amendment to the contract provided additional compensation to the plaintiff based on her performance of duties that she was already obligated to perform under the original contract. The plaintiff argues that the trial court erred in determining that the amendment to the contract was not supported by consideration.

■ To support a modification of an agreement, there must be consideration. *De Fontaine v. Passalino*, 222 Ill. App. 3d 1018, 1028 (1991). Valuable consideration for a contract consists of some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. *De Fontaine*, 222 Ill. App. 3d at 1028. A promise to do something that one is already obligated to do is no consideration and creates no new obligation. *Moehling v. W.E. O'Neil Construction Co.*, 20 Ill. 2d 255, 266 (1960).

■ Under the amendment to the contract, the parties agreed that if the plaintiff's total compensation from CASA of Du Page County for 1994 did not total $50,000, the plaintiff would be entitled to an additional $16,984 from the sums actually received during 1995 and 1996 from the NCASAA grant awarded to CASA of Du Page County during 1994. The amendment to the contract then provided for a payout schedule through 1995 and ending in January 1996 with payouts totaling $16,984.

Under the amendment to the contract, the plaintiff would have received a benefit in that she would have been entitled to an additional $16,984 from CASA of Du Page County that was not due her under the original contract (see our discussion below regarding what was due the plaintiff under the original contract). However, CASA of Du Page County would have received nothing in return except for the plaintiff's continued performance of her original contract through December 31, 1994, which she was already obligated to do. Consequently, we conclude that the trial court properly found that there was no consideration for the amendment to the contract (see *Moehling*, 20 Ill. 2d at 266) and that since there was no consideration for the amendment to the contract, the amendment to the contract was unenforceable.

■ The plaintiff argues that, even if the amendment to the contract was unenforceable, she is entitled to the relief sought in her pleadings based on the original contract. We disagree.

The original contract provides that the plaintiff is entitled "to receive as compensation an amount equal to fifty (50) percent of the total gross receipts donated, given and/or granted to CASA of Du Page County[ ] for the period beginning January 1, 1994 and ending December 31, 1994, up to an amount not to exceed $50,000." The plaintiff argues that, under the original contract, she was entitled to 50% of the entire $75,000 NCASAA grant, or $37,500. However, CASA of Du Page County was not granted $75,000 "for the period beginning January 1, 1994 and ending December 31, 1994." Rather, it was granted $75,000 for a two-year period, payable in quarterly installments beginning in July 1994 and ending in June 1996. Therefore, under the original contract, the plaintiff was not entitled to 50% of the entire $75,000 NCASAA grant. Instead, she was entitled to 50% of that portion of the NCASAA grant that was granted "for the period beginning January 1, 1994 and ending December 31, 1994."

A review of the record reveals that, under the original contract, the plaintiff was actually overpaid. During the period beginning July 1, 1994, and ending December 31, 1994, NCASAA disbursed $30,000 to CASA of Du Page County from grant funds. During that same period, CASA of Du Page County paid the plaintiff $26,090.55 as total compensation. Of this amount, $20,516 was paid by CASA of Du Page County from the funds received from the NCASAA grant. However, under the original contract, the plaintiff was only entitled to 50% of $30,000 (the funds CASA of Du Page County received from the NCASAA grant during 1994), which is $15,000. Therefore, as the plaintiff was actually overpaid in the amount of $5,516, CASA of

Du Page County did not breach its contract with the plaintiff. Accordingly, the trial court properly granted summary judgment in favor of CASA of Du Page County.

Since we have determined that the trial court properly granted summary judgment in favor of CASA of Du Page County on this basis, we need not address the plaintiff's arguments that the defenses of impossibility of performance and mistake of fact were not available to CASA of Du Page County.

■ We turn now to the issue of whether the trial court properly granted summary judgment in favor of Picchietti. However, before reaching the merits of this issue, we note that the plaintiff has misrepresented the record on appeal. In both her original and amended statement of facts, the plaintiff stated that Picchietti did not file an answer to the amended complaint. The plaintiff argues that Picchietti's alleged failure to file an answer operates as an admission of the facts alleged in the complaint. However, our review of the record reveals that Picchietti did, in fact, file an answer to the amended complaint on July 13, 1995, which is included in the record on appeal. Moreover, the plaintiff's third amended appendix to her brief demonstrates her awareness that Picchietti filed an answer and that the answer is included in the record on appeal. Based on the plaintiff's misrepresentation of the record on appeal, counsel for CASA of Du Page County and Picchietti has asked this court to impose sanctions under Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)). While we certainly do not want to encourage such misrepresentation of the record on appeal, we decline to impose sanctions in the present case.

We will now address the issue of whether the trial court properly granted summary judgment in favor of Picchietti on the plaintiff's claim for tortious interference with an existing contract (count II). The plaintiff argues that the trial court erred in granting summary judgment in favor of Picchietti because a genuine issue of material fact exists as to Picchietti's motives in contacting NCASAA and because she alleged sufficient facts to state a cause of action for tortious interference with an existing contract.

■ The elements necessary to state a cause of action for tortious interference with an existing contract are (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other as a result of the defendant's wrongful conduct; and (5) damages. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989).

■ In the present case, we have already concluded that the trial court properly found that the amendment to the contract was unenforceable and that CASA of Du Page County did not breach the original contract. Thus, the plaintiff has failed to establish two of the elements necessary to state a cause of action for tortious interference with an existing contract (see *HPI Health Care Services*, 131 Ill. 2d at 154-55), and summary judgment in favor of Picchietti was proper (see *Pyne*, 129 Ill. 2d at 358).

Since we have already concluded that the trial court properly granted summary judgment in favor of Picchietti on this basis, we need not address the plaintiff's arguments that the defense of corporate officer qualified privilege was not available to Picchietti and that a genuine issue of material fact existed as to Picchietti's motive in contacting NCASAA.

Finally, we turn to the issue of whether the trial court properly granted NCASAA's motion to dismiss for lack of personal jurisdiction. The plaintiff asserts that *in personam* jurisdiction over NCASAA exists because NCASAA has "transacted business" within Illinois and because NCASAA is "doing business" within Illinois. See 735 ILCS 5/2—209(a)(1), (b) (West 1994). NCASAA argues that its conduct fits within neither of these categories and that, even if it does, the exercise of *in personam* jurisdiction over it is inconsistent with due process.

■ The party who wishes to impose jurisdiction has the burden of establishing a valid basis for jurisdiction over a nonresident defendant. *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 310 (1986). The essential inquiry on appeal is whether the plaintiff has met this burden. *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.*, 136 Ill. App. 3d 1084, 1089 (1985).

Illinois courts may exercise jurisdiction over a nonresident defendant if jurisdiction is proper under section 2—209 of the Code of Civil Procedure (the Illinois long-arm statute) (735 ILCS 5/2—209 (West 1994)) and if the exercise of jurisdiction is consistent with state and federal due process requirements. *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). However, subsection (c) of the Illinois long-arm statute, effective September 7, 1989, enables an Illinois court to exercise *in personam* jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2—209(c) (West 1994). Based on subsection (c), an Illinois court may exercise personal jurisdiction over a nonresident defendant as long as the exercise of such jurisdiction offends neither federal nor state guarantees of due process. *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 342 (1992).

■ Federal due process requires that, in order to exercise *in personam* jurisdiction over a nonresident defendant, it is necessary that the defendant have certain "minimum contacts" with the forum state such that the maintenance of the suit there does not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343 (1940). In determining whether the trial court's exercise of *in personam* jurisdiction over a nonresident defendant satisfies the requirements of federal due process, a court must consider three criteria: (1) whether the nonresident defendant had minimum contacts with the forum state such that it had fair warning that it could be required to defend itself there; (2) whether the action arose out of or related to the defendant's contacts with the forum state; and (3) whether it is reasonable to require the defendant to litigate in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-77, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-84 (1985).

For the exercise of personal jurisdiction over a nonresident defendant to satisfy due process requirements, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240 (1958). Satisfaction of this requirement ensures that an alien defendant will not be forced to litigate in a distant or inconvenient forum solely as a result of random, fortuitous, or attenuated contacts, or the unilateral act of a consumer or some other third person. *Burger King*, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183. The minimum contacts and fair warning requirements for the exercise of personal jurisdiction over a nonresident defendant consistent with due process are satisfied if a defendant has either purposefully directed its activities at residents of the forum state, reached out beyond one state and created continuing relationships and obligations with citizens of the forum state, or purposefully derived benefits from its activities within the forum state. *Burger King*, 471 U.S. at 471-74, 85 L. Ed. 2d at 540-41, 105 S. Ct. at 2181-83.

Once it has been determined that a defendant's conduct establishes minimum contacts with the forum state, these contacts may be considered in light of several other factors to determine whether the assertion of *in personam* jurisdiction comports with due process. *Burger King*, 471 U.S. at 476, 85 L. Ed. 2d at 543, 105 S. Ct. at 2184. The burden on the defendant, while always a primary concern, will

in an appropriate case be considered in light of other relevant factors, including the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564 (1980).

These standards of federal due process delineate " 'the outer limits beyond which a State may not go to acquire jurisdiction over nonresidents.' " *Rollins*, 141 Ill. 2d at 271, quoting *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d 190, 197 (1981). Illinois courts must ultimately look to the meaning of the Illinois long-arm statute (735 ILCS 5/2—209 (West 1994)) and to the due process guarantee of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). *Rollins*, 141 Ill. 2d at 271-75. The Illinois long-arm statute and the Illinois Constitution may restrict the power of Illinois courts to bring nonresidents before them to a greater extent than do the federal due process clause and the "minimum contacts" test recognized by the federal courts. *Rollins*, 141 Ill. 2d at 271-75. Under the state due process guarantees, jurisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts that occur in Illinois or that affect interests located in Illinois. *Rollins*, 141 Ill. 2d at 275.

The facts relevant to this issue are as follows: NCASAA is located in, and incorporated under the laws of, the State of Washington. Since its founding, NCASAA's offices have been located in Seattle, Washington. Two of NCASAA's 15 national board members are Illinois residents. NCASAA has no offices, employees, property, or bank accounts in Illinois.

NCASAA is a national membership organization for hundreds of local CASA programs throughout the United States. The CASA name is owned by NCASAA. It is a condition of the use of the CASA name and logo that local CASA programs become members of NCASAA and agree to abide by NCASAA's national standards.

NCASAA members include numerous local CASA programs in all 50 states. These local CASA programs are independently operated and managed. One state and 20 local CASA programs located in Illinois are members of NCASAA. Each local CASA program pays NCASAA a $90 annual membership fee. NCASAA offers its members support services, which may include training, technical assistance, and the right to use certain trademarks and copyrighted materials.

CASA of Du Page County is one of the local CASA programs in Illinois that is a member of NCASAA. NCASAA did not found or establish CASA of Du Page County. No employee of NCASAA has ever visited CASA of Du Page County. In February 1993, two NCASAA staff members attended the Illinois State CASA conference, where they met and spoke with two representatives of CASA of Du Page County.

NCASAA provides disbursement of funding received from the DOJ, in the form of grants to local CASA programs. In January of each year, NCASAA distributes requests for proposals to the local CASA programs. These requests for proposals include grant application forms. Local CASA programs then send NCASAA grant application proposals. NCASAA distributes funds to as many local CASA programs as qualify. NCASAA sends a document entitled "Terms and Conditions for National CASA Grants" to local CASA programs. Local CASA programs sign it and send it back to NCASAA. Once NCASAA receives it, NCASAA's chief executive officer signs it. At this point, NCASAA considers the local CASA programs to be grantees. As a result of receiving NCASAA grant funds, local CASA programs have additional reporting requirements.

Nine CASA programs located in Illinois applied for and received NCASAA grants for 1994 and 1995. These grants ranged in amount from $27,000 to $75,000 and totaled $422,999.

CASA of Du Page County was one of the nine CASA programs located in Illinois that applied for and received NCASAA grants for 1994 and 1995. On July 20, 1994, NCASAA entered into an agreement to grant CASA of Du Page County $75,000, payable in quarterly installments over the period beginning July 1, 1994, and ending June 30, 1996. CASA of Du Page County accepted the terms and conditions of the grant. NCASAA can terminate the grant and cease making disbursements at any time during the grant period for violations of these terms and conditions. In January 1995, NCASAA prohibited CASA of Du Page County from paying any portion of the NCASAA grant funds to the plaintiff when she was no longer performing services on behalf of CASA of Du Page County.

During 1994 and 1995, NCASAA received charitable contributions from 23 individuals in Illinois, totaling $1,245.

■ Applying the Illinois long-arm statute and the state and federal due process requirements to the facts of the present case, we conclude that the plaintiff has met her burden (see *Professional Group Travel*, 136 Ill. App. 3d at 1089) of showing that the exercise of jurisdiction over NCASAA would be fair, just, and reasonable under the relevant circumstances (see *Rollins*, 141 Ill. 2d at 275) and that

NCASAA has sufficient contacts with Illinois to satisfy due process (see *International Shoe*, 326 U.S. at 316, 90 L. Ed. at 102, 66 S. Ct. at 158).

By its activities outlined above, NCASAA has reached out beyond its home state and created continuing relationships and obligations with Illinois residents. See *Burger King*, 471 U.S. at 471-74, 85 L. Ed. 2d at 540-41, 105 S. Ct. at 2181-83. In addition, NCASAA has purposefully derived benefits from its activities within Illinois, such as membership dues from local CASA programs in Illinois and contributions from Illinois citizens. See *Burger King*, 471 U.S. at 471-74, 85 L. Ed. 2d at 540-41, 105 S. Ct. at 2181-83. Hence, its contacts with Illinois cannot reasonably be characterized as random, fortuitous, or attenuated. See *Burger King*, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183. The record demonstrates that NCASAA's contacts with Illinois are sufficient to make it foreseeable that it might reasonably be haled into court in Illinois. See *Burger King*, 471 U.S. at 471-77, 85 L. Ed. 2d at 540-44, 105 S. Ct. at 2181-84. In addition, NCASAA's contacts within Illinois are sufficiently related to the cause of action against them and, at least in part, gave rise to it. See *Burger King*, 471 U.S. at 471-77, 85 L. Ed. 2d at 540-44, 105 S. Ct. at 2181-84. Therefore, the trial court erred in finding that it lacked *in personam* jurisdiction over NCASAA.

Based on our conclusion that NCASAA was subject to *in personam* jurisdiction, we need not address the plaintiff's argument that NCASAA generally appeared when CASA of Du Page County submitted Piraino's affidavit to the trial court.

For the foregoing reasons, the judgment of the circuit court of Du Page County granting CASA of Du Page County and Picchietti's motion for summary judgment is affirmed; the judgment granting NCASAA's motion to dismiss for lack of personal jurisdiction is reversed; and the cause is remanded for further proceedings consistent with this decision.

Affirmed in part and reversed in part; cause remanded.

BOWMAN and RATHJE, JJ., concur.