LAWRENCE AND ALLEN, INC., Plaintiff-Appellant, v. CAMBRIDGE HUMAN RESOURCE GROUP, INC., Defendant-Appellee (John J. Sheets, Defendant).

Second District    No. 2—96—1337

---

Opinion filed September 26, 1997.

Gabriella R. Comstock and Jeffry J. Knuckles, both of Knuckles & Jagel, of Naperville, for appellant.

Richard L. Mandel and Uve R. Jerzy, both of Mandel, Lipton & Stevenson, Ltd., of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:
Plaintiff, Lawrence & Allen, Inc., appeals from an order of the

circuit court of Du Page County granting summary judgment in favor of defendant, Cambridge Human Resource Group, Inc., on plaintiff's claim for tortious interference with contract. Defendant, plaintiff's competitor in the corporate employee outplacement industry, hired defendant John J. Sheets (Sheets), plaintiff's former at-will employee, despite Sheets' postemployment restrictive covenant with plaintiff. Sheets is not a party to this appeal. We affirm.

Plaintiff contends on appeal that the trial court improperly granted summary judgment because questions of material fact exist. Defendant argues on appeal, as it did in the trial court, that plaintiff is unable to establish each of the elements of its claim.

■ The elements of tortious interference with contract are (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989). We resolve this matter based on the lack of a valid and enforceable contract.

The record on appeal reveals the following undisputed material facts. Plaintiff and defendant were competitors in the highly competitive corporate employee outplacement industry. In the corporate employee outplacement industry, businesses, usually large corporations, retain outplacement firms on a project basis to assist displaced, or soon to be displaced, employees find new employment.

Generally, a business solicits proposals from multiple outplacement firms for the contract on a project, and the outplacement firms submit bids. This general procedure, however, may vary according to individual preferences. For instance, Raymond Vogt, a former director of human resources at Food Machinery Group, Inc., of FMC (FMC), allowed displaced employees to choose from two or three recommended outplacement firms.

The decision of which outplacement firm to hire depends on a variety of factors: the nature and size of the project, the location of the project, the types of employees involved, and the expertise or experience of the outplacement firm. For example, FMC used defendant's services for individual outplacement but not for group outplacement. Similarly, Nichols-Homeshield used a national outplacement firm rather than a local outplacement firm when it needed outplacement services for several employees in different parts of the country. In addition, since most outplacement firms are competitive in price, price is typically a secondary factor.

Regardless of prior success in obtaining a contract for a project, outplacement firms are not assured of any future success with a business. In fact, a business may retain different outplacement firms simultaneously on separate concurrent projects and even on the same project when different types of employees, such as senior executives, middle management, and hourly employees, are involved. While adding that some businesses desire to retain the same outplacement firm on separate concurrent projects for reasons of continuity, Lawrence Stuenkel, plaintiff's senior partner and president, admitted a business may retain different outplacement firms on separate projects and on the same project.

Consequently, a business typically uses the services of several outplacement firms. For instance, FMC used eight or nine different outplacement firms between 1988 and 1995. PCA used nine different firms, some national and some local, during 1990 alone. Deloitte & Touche used four or five different outplacement firms in 1990 and 1991. Ameritech used six to eight different outplacement firms during any given year.

In addition, outplacement firms and businesses in need of outplacement services are well known to each other in the industry. As a result, competing outplacement firms frequently solicit the same businesses, and businesses freely contact competing outplacement firms. Moreover, the names of human resource directors are common knowledge among outplacement firms and are easily ascertainable from standard business directories and from professional organization directories.

Sheets' at-will employment with plaintiff began on January 4, 1988. On June 27, 1989, Sheets signed a postemployment restrictive covenant under the threat of termination and without any change to his job title, responsibilities, or salary. The restrictive covenant contained a covenant not to compete that precluded Sheets from "directly or indirectly compet[ing] with plaintiff within the territorial United States" for two years after his voluntary termination of employment with plaintiff. In addition, the restrictive covenant contained a covenant not to solicit that precluded Sheets from "directly or indirectly perform[ing] similar services for or solicit[ing] any client of [plaintiff]" for the same two-year time period. There was no written employment contract other than the restrictive covenant. Sheets' employment with plaintiff ended on November 12, 1991, and he subsequently began working for defendant.

On May 15, 1992, plaintiff filed a complaint seeking injunctive relief against Sheets and damages for tortious interference with contract against defendant. Plaintiff's amended complaint was identi-

cal, except plaintiff substituted a claim for breach of contract against Sheets for its claim for injunctive relief.

Sheets and plaintiff thereafter sought summary judgment. Sheets argued the restrictive covenant was unenforceable. Plaintiff's motion was based on Sheets' alleged failure to answer the amended complaint. The trial court denied both motions.

Defendant subsequently brought its first motion for summary judgment. Relying on *Creative Entertainment, Inc. v. Lorenz*, 265 Ill. App. 3d 343 (1994), defendant argued that the restrictive covenant was unenforceable because it was not ancillary to an employment contract and was not supported by consideration. The trial court denied the motion.

During the course of discovery, plaintiff identified nine businesses as the only businesses at issue between the parties: FMC, PCA, ACCO, Deloitte & Touche, Comdisco, Nichols-Homeshield, Ameritech, Rush-Presbyterian-St. Lukes Hospital, and Northern Telecom, Inc. Each of the nine businesses had been a client of both plaintiff and defendant at some time between 1984 and 1993.

After the close of discovery, the trial court granted defendant leave to file another motion for summary judgment. The trial court granted that motion, and plaintiff timely appealed.

■ A motion for summary judgment should only be granted when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). To determine whether a genuine issue of material fact exists, a reviewing court should consider the pleadings, depositions, admissions, exhibits, and affidavits on file and construe them strictly against the movant and liberally in favor of the opponent of the motion. *Purtill*, 111 Ill. 2d at 240.

While a plaintiff need not prove its case in opposition to a motion for summary judgment, it is required to present some factual basis that would arguably entitle it to judgment in its favor. *Flint v. Court Appointed Special Advocates of Du Page County, Inc.*, 285 Ill. App. 3d 152, 162 (1996). Thus, if a plaintiff fails to establish an element of its cause of action, summary judgment in favor of the defendant is proper. *Flint*, 285 Ill. App. 3d at 162.

An order granting summary judgment will be reversed if a genuine issue of material fact existed or if the judgment was incorrect as a matter of law. *Flint*, 285 Ill. App. 3d at 162. The disposition of a summary judgment motion is not discretionary and the standard of review is *de novo*. *Flint*, 285 Ill. App. 3d at 162. This court may affirm summary judgment on any basis found in the record. *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996).

Before reaching the merits of this appeal, we address two preliminary arguments—defendant's argument regarding the scope of our review and plaintiff's argument regarding the effect of a denial of summary judgment on a later motion for summary judgment. We reject both arguments.

■ Defendant asserts correctly that "upon appellate review of a summary judgment ruling the appellant may only refer to the record as it existed at the time the trial court ruled, outline the arguments made at that time, and explain why the trial court erred in granting summary judgment." *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.*, 226 Ill. App. 3d 507, 509-10 (1992). Defendant then argues that plaintiff improperly raises an argument on appeal regarding confidential information that was not presented to the trial court in response to defendant's motion for summary judgment and improperly supports that argument with facts in the record that were likewise not presented to the trial court in response to its motion for summary judgment.

We find that plaintiff sufficiently raised its confidential information argument in response to defendant's motion for summary judgment. In fact, defendant even concedes that plaintiff raised this argument in the trial court although it characterizes plaintiff's argument as an "allusion *** unsupported by any fact."

In addition, on *de novo* review, we are free to consider any pleadings, depositions, admissions, and affidavits on file at the time of the hearing regardless of whether facts contained therein were presented to the trial court in response to the motion for summary judgment. See 735 ILCS 5/2—1005 (West 1996); *Purtill*, 111 Ill. 2d at 240. *Rayner Covering Systems* is factually distinguishable because the appellant in that case attempted to rely on facts added to the record after the trial court had ruled on a motion for summary judgment. See *Rayner Covering Systems*, 226 Ill. App. 3d at 510 (appellant referred to facts from trial testimony and an affidavit attached to a motion to reconsider which were not yet of record when the trial court granted summary judgment). Thus, we will consider plaintiff's confidential information argument and any facts contained in the record when the trial court ruled on defendant's motion.

■ Plaintiff's argument, upon which it relied heavily in the trial court, is that defendant's motion for summary judgment should have been denied because previous motions for summary judgment were denied. Section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1996)) places no limit on the number of motions for summary judgment that may be brought by a party. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 909 (1994). Moreover, a

defendant may move at any time for summary judgment on all or any part of the relief sought against him. *Kusiciel v. La Salle National Bank*, 106 Ill. App. 3d 333, 338 (1982). Furthermore, the denial of a motion for summary judgment is an interlocutory order which is neither final nor appealable and, thus, cannot form the basis for a claim of *res judicata*. *Pagano*, 257 Ill. App. 3d at 909. Finally, in a procedurally similar situation, a trial court may deny a motion for summary judgment and later change its position and grant that same motion. *Spires v. Mooney Motors, Inc.*, 229 Ill. App. 3d 917, 920 (1992). Therefore, the previous denial of summary judgment did not demand the denial of summary judgment in defendant's favor.

On the merits, plaintiff claims defendant interfered with its postemployment restrictive covenant with Sheets. To determine whether plaintiff is able to prove the existence of a valid and enforceable contract, we must determine whether the postemployment restrictive covenant is enforceable. The question of whether a restrictive covenant is enforceable or not is a question of law. *Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill. App. 3d 151, 162 (1986).

■ Prior to determining the reasonableness of a restrictive covenant, we must make two determinations. First, we must find that the restrictive covenant is ancillary to a valid contract and subordinate to the contract's main purpose; second, we must determine whether there is adequate consideration to support the restrictive covenant. *Millard Maintenance Service Co. v. Bernero*, 207 Ill. App. 3d 736, 745 (1990).

In reliance upon *Creative Entertainment, Inc. v. Lorenz*, 265 Ill. App. 3d 343 (1st Dist. 1994), defendant argues that the restrictive covenant was not ancillary to a valid employment contract. We decline to follow the holding in *Creative Entertainment* because it is inconsistent with Illinois precedent and persuasive authority. Instead, we follow the well-reasoned decision in *Abel v. Fox*, 274 Ill. App. 3d 811 (4th Dist. 1995). "To be enforceable, a covenant not to compete must be ancillary to *either* a transaction (an otherwise valid contract), *or* a valid relationship. *** Therefore, a noncompetition covenant entered into by an at-will employee, whether the employee is employed under a written or oral agreement, complies with the requirement of ancillarity." (Emphasis in original.) *Abel*, 274 Ill. App. 3d at 820

Here, Sheets' restrictive covenant is ancillary to his at-will employment relationship with plaintiff. Thus, the first prong of our preliminary inquiry is satisfied.

Defendant also relies upon *Creative Entertainment* for the propo-

sition that consideration was lacking in this case. The court's ruling in *Creative Entertainment* hinged on the ancillary nature of the covenant not to compete, not the existence of adequate consideration. *Abel*, 274 Ill. App. 3d at 816. Thus, the court's ruling in *Creative Entertainment* does not support defendant's proposition.

Moreover, Sheets' restrictive covenant is supported by adequate consideration. Continued employment for a substantial period of time is sufficient consideration to support an employment agreement. *McRand, Inc. v. Van Beelen*, 138 Ill. App. 3d 1045, 1055 (1985). In the instant case, Sheets signed the postemployment restrictive covenant on June 27, 1989, but continued his employment with plaintiff until November 12, 1991. This period of continued employment served as adequate consideration to support the postemployment restrictive covenant. See *Agrimerica, Inc. v. Mathes*, 199 Ill. App. 3d 435, 442 (1990) (holding more than two years of continued employment constituted sufficient consideration). Therefore, the second prong of our preliminary analysis is also satisfied.

■ We next address the reasonableness of the restrictive covenant. A restrictive covenant is enforceable if the terms of the agreement are reasonable and necessary to protect a legitimate business interest of the employer (*Capsonic Group v. Swick*, 181 Ill. App. 3d 988, 992-93 (1989)), a determination that necessarily turns on the facts and circumstances of each case. *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill. App. 3d 557, 568 (1992). A restrictive covenant's reasonableness is measured by its hardship to the employee, its effect upon the general public, and the reasonableness of the time, territory, and activity restrictions. *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 17 (1993).

In the instant case, the geographic limitation in the covenant not to compete encompasses the entire United States while the covenant not to solicit contains no geographic limitation. Plaintiff contends that a geographic limitation is unnecessary. Conversely, defendant argues that a nationwide geographic limitation is patently unreasonable.

A covenant not to solicit does not require a geographic limitation, but it must be reasonably related to the employer's interest in protecting customer relations that its employees developed while working for the employer. *Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 76 (1992). Courts are hesitant to enforce prohibitions against employees servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed by plaintiff. *McRand*, 138 Ill. App. 3d at 1057. In fact, the lack of a geographical scope may be determinative where the territo-

rial restrictions are greater than the area the salesman served on behalf of the former employer. *McRand*, 138 Ill. App. 3d at 1057-58. The employee should only be excluded from the territory where he was able to establish a certain relationship with the former employer's customers. *McRand*, 138 Ill. App. 3d at 1058.

Here, the covenant not to solicit is unlimited. It prohibits Sheets from soliciting "any client" of plaintiff but does not define the term "client." Consequently, the phrase "any client" includes any client of plaintiff regardless of whether Sheets developed a relationship with that client during his employment with plaintiff. In other words, the covenant prohibits Sheets from soliciting clients whom he never solicited or contacted while employed by plaintiff. In addition, because the term "client" is undefined, the covenant fails to distinguish between past clients, present clients, clients at the time Sheets left plaintiff's employment, or potential clients. Thus, the lack of a geographic limitation or of any qualifying language in the covenant not to solicit is unreasonable.

In addition, the geographical limitation encompassing the entire United States in the covenant not to compete is unreasonable. With respect to the geographic scope of a covenant not to compete, courts generally look to whether the restricted area is coextensive with the area in which the employer is doing business. *Arpac*, 226 Ill. App. 3d at 77. In this case, the covenant not to compete prevents Sheets from competing with plaintiff in virtually any capacity in the entire corporate employee outplacement industry in the United States. Plaintiff's office, however, was located in Naperville, Illinois. Furthermore, there is no evidence in the record that plaintiff's clients were located nationwide. For instance, PCA was located in Evanston, ACCO was located in Wheeling, Deloitte & Touche was located in Chicago, and Nichols-Homeshield was located in Naperville. Furthermore, plaintiff was considered a local outplacement firm as opposed to a nationwide outplacement firm.

Plaintiff contends that it only seeks to prohibit Sheets from working where Sheets already established a relationship with plaintiff's customers and that it does not seek a complete ban on Sheets' employment within the outplacement industry. Neither the covenant not to compete nor the covenant not to solicit, however, is qualified in such a manner.

In addition, the covenant not to compete and the covenant not to solicit in this case contain a two-year time limitation. In *Millard Maintenance Service*, the court found a two-year time restriction in a covenant not to compete was reasonable since it took the employer "a great deal of time" to acquire and maintain clients. *Millard Main-*

*tenance Service*, 207 Ill. App. 3d at 750. Similarly, in *McRand*, the court found two-year and one-year time restrictions in a covenant not to solicit reasonable in light of testimony that it took the employer one to three years to establish a major account. *McRand*, 138 Ill. App. 3d at 1058-59. In the present case, the record contains no evidence regarding how long it took plaintiff to acquire a client or obtain the contract on a project. Therefore, we make no finding on the reasonableness of the two-year time restriction in this case.

The restrictive covenant here contains activity restrictions against competition and solicitation. Activity restrictions, like restrictions on competing or soliciting, should be narrowly tailored to protect only against activities that threaten the employer's interest. See *Dryvit System, Inc. v. Rushing*, 132 Ill. App. 3d 9, 12 (1985) (restrictive covenant is reasonable if not greater than is necessary to protect the employer). A covenant not to solicit is subject to a lower degree of scrutiny than a covenant not to compete. *Abbott-Interfast*, 250 Ill. App. 3d at 18. A covenant not to solicit that prohibits an employee from soliciting any of the employer's clients is less likely to be upheld as a reasonable restraint on trade than a covenant not to solicit which prohibits an employee only from soliciting clients with which the employee has had contact while he or she was employed with the employer. *Abbott-Interfast*, 250 Ill. App. 3d at 19. Courts are hesitant to enforce prohibitions against employees servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed by plaintiff. *McRand*, 138 Ill. App. 3d at 1057.

In *Arpac*, the court upheld the trial court's preliminary injunction enforcing a covenant not to solicit but held a covenant not to compete unenforceable. *Arpac*, 226 Ill. App. 3d at 76, 79. Although the court found the covenant not to solicit was designed to protect the employer's interest, it also found that the covenant not to compete was "patently unfair" and "clearly beyond the need of [the employer] to protect its interest." *Arpac*, 226 Ill. App. 3d at 76, 79. The court then noted that the employer's concern for protecting its customers was adequately addressed by the covenant not to solicit. *Arpac*, 226 Ill. App. 3d at 79.

Similarly, in *Millard Maintenance Service*, the court found a covenant not to solicit was a reasonable activity restraint. In that case, the employee was free to solicit any customer that was not a customer on the day the employee left, any customer that was not a current customer, and any current customer that terminated its relationship with the employer. *Millard Maintenance Service*, 207 Ill. App. 3d at 750.

In this case, the restrictive covenant prohibits Sheets from competing with plaintiff and from soliciting plaintiff's clients. The covenant not to compete bars virtually all competition in any capacity, and the covenant not to solicit bars Sheets from soliciting clients whom Sheets had no relationship with and never solicited while in plaintiff's employment. Therefore, while the covenant not to solicit alone would have been sufficient to protect plaintiff's interests in this case, both covenants are overly broad and, thus, unreasonable.

There is no evidence in the record of any hardship to the public. We note, however, that the outplacement service industry is highly competitive and there are other outplacement firms to provide outplacement services to the public. See *McRand*, 138 Ill. App. 3d at 1057; see also *Millard Maintenance Service*, 207 Ill. App. 3d at 750 (finding no injurious effect upon the public where the public was still free to seek the services of the employee's new employer).

We do find, however, that, based upon the unreasonable nature of the limitations in the restrictive covenant, the restrictive covenant was unduly harsh on Sheets. This case is similar to *Arpac*, where the court found a covenant not to compete to be unduly harsh on the employee because it contained virtually unlimited geographic restraints and prevented the employee from engaging in the shrink wrap business in any capacity. *Arpac*, 226 Ill. App. 3d at 79. Conversely, this case is distinguishable from *Millard Maintenance Service*, where the court found no unreasonable hardship for the employee because the employee was free to solicit any customer except those with whom the employer had established a relationship. *Millard Maintenance Service*, 207 Ill. App. 3d at 750.

In summary, we find the postemployment restrictive covenant's territory and activity restrictions overly broad and unreasonable and unduly harsh on Sheets. Furthermore, as a result of the significant deficiencies in the postemployment restrictive covenant, we decline plaintiff's request to make any modifications. See *Lee/ O'Keefe Insurance Agency, Inc. v. Ferega*, 163 Ill. App. 3d 997, 1006-07 (1987) (finding a modification of the contract would have been tantamount to drafting a new contract).

■ Finally, we address whether plaintiff has a legitimate business interest to protect with a restrictive covenant. Plaintiff contends it had a legitimate business interest in its customers and in its confidential information. Generally, there are two situations in which a legitimate business interest will exist: (1) where the customer relationships are near permanent and but for the employee's association with the employer the employee would not have had contact with the customers; and (2) where the former employee acquired

trade secrets or other confidential information through his employment and subsequently tried to use it for his own benefit. *Capsonic Group*, 181 Ill. App. 3d at 993.

Illinois courts have developed two tests for determining whether an employer has a near-permanent relationship with its customers or clients. Some courts analyze the near-permanent relationship according to the seven objective factors as set forth in *Agrimerica, Inc. v. Mathes*, 199 Ill. App. 3d 435 (1990), while others follow the "nature of the business" test as espoused in *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill. App. 3d 557, 568 (1992). We believe the "nature of the business" test is more appropriate to determine whether plaintiff enjoyed a near-permanent relationship with its customers in this case. See *Springfield Rare Coin Galleries, Inc. v. Mileham*, 250 Ill. App. 3d 922, 937 (1993) (*Agrimerica* factors need not be applied in all cases).

Generally, the near-permanency test turns in large degree on the nature of the business involved, and certain businesses are just more amenable to success under it. *Office Mates 5, North Shore*, 234 Ill. App. 3d at 568. For instance, a near-permanent relationship with clients is inherent in the provision of professional services. *Springfield Rare Coin Galleries*, 250 Ill. App. 3d at 935; see also *Office Mates 5, North Shore*, 234 Ill. App. 3d at 571 (and cases cited therein). On the other hand, a near-permanent relationship with customers is generally absent from businesses engaged in sales. *Springfield Rare Coin Galleries*, 250 Ill. App. 3d at 935. Moreover, a near-permanent relationship is generally absent where the nature of the plaintiff's business does not engender customer loyalty by providing a unique product or personal service and customers utilize many suppliers simultaneously to meet their needs. *Office Mates 5, North Shore*, 234 Ill. App. 3d at 571. In this type of situation, the industry is highly competitive, the identity of customers or clients is well known in the industry, employers rely heavily on their sales force, and customers satisfy their needs through cross-purchasing. *Office Mates 5, North Shore*, 234 Ill. App. 3d at 572.

In *Williams & Montgomery, Ltd. v. Stellato*, 195 Ill. App. 3d 544, 554 (1990), the court found that a law firm lacked a near-permanent relationship with its clients because its clients were well known to other law firms, the names of its clients were published in directories, and its clients also retained other law firms.

The court in *Office Mates 5, North Shore* found that the plaintiff's office support personnel placement agency, an industry with many characteristics similar to the corporate employee outplacement industry, lacked a near-permanent relationship where the businesses

that needed such support were well known and listed in directories, information about the businesses was only a phone call away, and these businesses filled their hiring needs from more than one placement agency and plaintiff was not that agency every time. *Office Mates 5, North Shore*, 234 Ill. App. 3d at 572.

In the present case, the corporate employee outplacement industry is highly competitive. Businesses in need of outplacement services are well known in the industry. Contracts are generally awarded through a bidding process or according to an employee's choice of several recommended outplacement firms. Success on one project does not guarantee success on the next project. Mr. Stuenkel even admitted that plaintiff has lost contracts on projects with clients and is not chosen every time. Businesses use many different outplacement firms, on the same project or on different projects. Many factors determine which outplacement firm is used. The names of human resource directors are easily ascertainable. In other words, the corporate employee outplacement industry "does not engender customer loyalty [by providing] a unique product or personal service, and customers utilize many suppliers simultaneously to meet their needs." *Office Mates 5, North Shore*, 234 Ill. App. 3d at 571.

In addition, plaintiff is unable to satisfy the "but for" portion of the near-permanent test. When the names of an employer's customers are easily ascertainable from telephone and professional directories or are generally well known by an employer's competitors, the employer will generally be unable to satisfy that the employee would not have had contact with the customers but for the employee's employment with the employer. *Springfield Rare Coin Galleries*, 250 Ill. App. 3d at 935-36. In this case, the human resource directors at businesses in need of outplacement services are common knowledge in the industry and are easily ascertained from business and professional directories. Accordingly, plaintiff does not enjoy a near-permanent relationship with its clients.

Alternatively, plaintiff asserts that it also has a legitimate business interest in its confidential information, such as pricing structure, future bids, marketing plans, key contact persons, and a computer database of prospective employers. However, beyond bald conclusions, plaintiff failed to offer any evidence that Sheets actually tried to use any confidential information for his own benefit. See *Capsonic Group*, 181 Ill. App. 3d at 993 (former employee who acquired trade secrets or other confidential information through his employment must subsequently try to use it for his own benefit). Moreover, Sheets denied he took or attempted to use any of plaintiff's claimed confidential information. Consequently, plaintiff does not have a legitimate business interest in its claimed confidential information.

In conclusion, we find the restrictions in the postemployment restrictive covenant are unreasonable and that plaintiff lacked a legitimate business interest. Accordingly, the postemployment restrictive covenant is unenforceable, and plaintiff is unable to establish one of the elements of its cause of action. As a result, it is unnecessary to address the parties' additional arguments.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DOYLE and RATHJE, JJ., concur.