2015 IL App (1st) 130097

No. 1-14-2644

Opinion filed June 25, 2015

Fourth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CHRIS McINNIS, | ) | Appeal from the |
| Plaintiff-Appellee and | ) | Circuit Court of |
| Counterdefendant, | ) | Cook County. |
| v. | ) | |
| | ) | No. 2014 CH 7557 |
| OAG MOTORCYCLE VENTURES, | ) | |
| INC., d/b/a city limits Harley-Davidson, | ) | Honorable |
| Defendant-Appellant and | ) | Thomas R. Allen, |
| Counterplaintiff and Third-Party | ) | Judge, presiding. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| (Vroom Vroom, LLC, d/b/a | ) | |
| Woodstock Harley Davidson | ) | |
| Third-Party Defendant-Appellee). | ) | |

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith concurred in the judgment and opinion.
Justice Ellis dissented, with opinion.

**OPINION**

¶ 1     A former employee brought a complaint for declaratory relief seeking judicial determination that restrictive covenants in his employee agreement were unenforceable. The employer counterclaimed seeking injunctive relief against the employee and to enforce the

restrictive covenants in the employment agreement. The employer appeals from the order of the trial court denying its motion for a preliminary injunction.

¶ 2                                                    BACKGROUND

¶ 3        Chris McInnis (plaintiff) was employed as a salesman by OAG Motorcycle Ventures, INC., d/b/a/ City Limits Harley-Davidson (defendant).  Defendant is a Harley-Davidson motorcycle dealership located in Palatine, Illinois. Defendant sells new and used Harley-Davidson motorcycles, parts and accessories, as well as Harley-Davidson apparel and gifts. Defendant also has a service department, storage capabilities, rider training and a rental department.  Anthony "Ozzie" Giglio is the owner and the chief executive officer of the Windy City American Motor Group (WCAMG), a consortium of four Harley-Davidson dealerships in the Chicagoland area, including defendant.

¶ 4        Plaintiff first began employment with defendant on August 25, 2009. At that time, plaintiff had no experience selling motorcycles and went through defendant's training program. Throughout plaintiff's employment with defendant there were regular meetings for the entire sales staff. Plaintiff became one of the top salesmen for defendant. His compensation was comprised of a base salary of $18,000 plus sales commission.

¶ 5        In October 2012, plaintiff informed defendant that he was leaving defendant to work for Vroom Vroom, LLC., d/b/a Woodstock Harley-Davidson (Woodstock). In late October 2012, plaintiff reported to work at Woodstock. After one day at Woodstock, plaintiff contacted defendant to find out if his old job was available. Plaintiff had not been taken off defendant's system for the one day he was gone. Giglio, concerned that plaintiff would leave again, informed plaintiff that as a condition of his employment, plaintiff was required to sign an

employee confidentiality agreement (agreement) that included noncompetition clauses. Plaintiff signed the agreement on October 25, 2012.

¶ 6    The agreement states in pertinent part:

"1.  Consideration.

Included in the mutual consideration acknowledged by the parties hereto, but without limitation, is an offer of employment with Company in an at-will employment relationship, and Employee's exposure to Company's and/or WCAMG's proprietary and confidential information as its employee.

* * *

4.    Prohibitions Regarding Company's and/or WCAMG's Customers and Employees.

a. *** Employee agrees that during the term of his employment and for a period of eighteen (18) months thereafter, he shall not, either for himself or as a member, partner stockholder, director, employee or agent of any other entity or organization:

(i)  accept employment with, be engaged as an independent contractor or consultant for or otherwise perform any services for, any Harley-Davidson dealership located within a radius of twenty-five (25) miles of any retail location of (a) Company

***

(ii)  directly or indirectly induce or influence any customer, supplier or other person that has a business relationship with Company and/or WCAMG to discontinue or reduce the extent of such relationship ***."

¶ 7    After signing the agreement, plaintiff was rehired and worked as a salesman for defendant from October 25, 2012, until he voluntarily resigned on May 1, 2014, a period of 18 months. Upon rehire, defendant waived the 90-day trial period for plaintiff that new hires

are required to complete to be eligible for benefits. From 2009 until 2012 no salesmen were subject to a confidentiality or noncompetition covenant. In June 2013, defendant started a policy that every salesman had to sign a noncompetition restrictive covenant.

¶ 8        Every Harley-Davidson dealership is assigned a dealer assigned territory (DAT) by Harley-Davidson Motor Company (HDMC), the corporate entity in Milwaukee, Wisconsin. There is no restriction preventing a dealership from pursuing potential customers in another dealership's DAT.

¶ 9        All Harley-Davidson dealerships have a "Harley Owners Group" (HOG). This group consists of customers of that dealership. Doug Jackson, a member of Woodstock's HOG, testified that Woodstock's HOG information was disseminated to each group member and this included a roster of names and contact information. By contrast, Giglio testified that defendant kept its HOG information confidential.

¶ 10       Defendant's customer information includes names, telephone numbers and email addresses. This information is stored in defendant's password protected "Connect" computer system. Each salesperson has access to "Connect" for the customers with whom they have dealt; however, customer data is not shared with anyone outside of defendant's dealership. The customer information is used for staying in touch with customers through direct mailings and emails, to generate sales and referrals.

¶ 11       Plaintiff maintained contact with his clients and potential clients by various means. He met clients at the dealership, at events, through referrals and his own social contacts. Plaintiff gave his cell phone number to clients and prospective clients in order to be available. In the summer of 2013, plaintiff was involved in an accident and could not be present at defendant's dealership. He continued to sell motorcycles from his home utilizing his cell phone.

¶ 12     Defendant had a policy, disseminated to all employees, prohibiting cell phone use on the dealership floor during business hours. Plaintiff testified that he used his cell phone at the dealership on a frequent basis. He testified that he was never disciplined or warned against such practice. Tim Ryan, a former sales manager of defendant's, testified that cell phone use was a necessary tool to connect with clients and that there were legitimate reasons why a salesman would use his cell phone to contact his customers.

¶ 13     During plaintiff's employment from August 2009, to May 2014, he sold about 240 motorcycles per year. Over that five-year period plaintiff sold about 1,200 motorcycles. He retained 179 client names, phone numbers and emails in his cell phone. Two of the names had a reference to a style of motorcycle.

¶ 14     Prior to plaintiff's May 2014 departure from defendant's employment, he was in contact with Woodstock starting in November 2013. Woodstock presented plaintiff with an employment contract on March 2, 2014. Plaintiff did not resign from defendant until May 1, 2014, so that he could receive commissions owed him. He returned to Woodstock, commencing employment there on May 5, 2014. Plaintiff's compensation at Woodstock is a base salary plus a bonus based upon the dealership's overall performance. Plaintiff's employment agreement provides indemnification for him in any litigation with defendant, the exception being if plaintiff misappropriates any confidential information from defendant.

¶ 15     On May 2, 2014, plaintiff filed a complaint in the circuit court of Cook County for declaratory judgment pursuant to section 2-701 of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2012)). In his complaint plaintiff alleged that there was not adequate consideration to support the noncompetition agreements between him and defendant and sought a judicial determination regarding their enforceability. Subsequently, defendant filed

its answer and a counterclaim against plaintiff and a third-party claim against Woodstock. On May 28, 2014, the trial court heard defendant's emergency motion for a temporary restraining order, which was denied. Thereafter, the parties engaged in expedited discovery in preparation for the hearing on defendant's motion for preliminary injunctive relief. The hearing was held on July 31 and August 1, 2014. In addition to the testimony of the witnesses, the parties submitted several exhibits to the trial court.

¶ 16    At the evidentiary hearing, the parties focused on plaintiff's cell phone, which contained 179 client contacts. Defendant maintained that the information was highly confidential. Evidence was also presented at the hearing about the buying habits of Harley-Davidson customers. It was adduced that customers are loyal to the Harley-Davidson brand and that they often shop at multiple dealerships.

¶ 17    After arguments by counsel, the trial court denied defendant's motion for a preliminary injunction and granted plaintiff's motion for declaratory judgement. The trial court specifically found that the "tenure [sic] of the testimony was that Harley is a Harley is Harley is Harley." The court commented regarding the affinity that Harley-Davidson customers have for the Harley brand and their loyalty to Harley and Harley products. With respect to the issue of consideration as it relates to enforceability of restrictive covenants, the trial court offered the following:

> "The general proposition of law in Illinois is that a restrictive covenant, to be valid and enforceable must be reasonable. That's the terminology. But before you consider whether it's reasonable the Court has to make two determinations. First, whether the restrictive covenant is ancillary to a valid contract; and then secondly, whether the restrictive covenant is supported by adequate consideration. Here the

restrictive covenant was clearly ancillary to a valid contract of employment. *** Now there has to be a determination of whether the restrictive covenant is supported by adequate consideration. *** [B]ecause these things all have individual facts, individual circumstances, and the totality of circumstances is definitely something the Court should look at, and as [a] matter of fact they're obligated to."

¶ 18    The trial court reasoned:

"[P]laintiff leaves, he works for one day at the other dealer, changes his mind and comes back, fearful that he might do it again, they give him a restrictive covenant. He signs the restrictive covenant, he agrees to the noncompete, and the operative time is October 25, 2012. He's not employed for two years yet when he leaves again. He leaves this time May 5, 2014. So under *Fifield*,[1] we don't have adequate consideration for the restrictive covenant, and it's subject to attack for that reason, on a very simple, narrow legal principle that is set forth in that case and has been common, and the Courts are aware of it. *** There can be other ways for [defendant] to enforce the covenant, even if it's less than two years. And that would be if there is evidence that there was additional consideration, such as added bonus in exchange for this restrictive covenant, more sick days, some incentives, some kind of newfangled compensation that would be considered in the eyes of the law additional consideration that would then support the restrictive covenant as being less than two years."

¶ 19    The trial court discussed the fact that defendant stated plaintiff's employment was consideration and the waiver of the 90-day trial period was also additional consideration. The court found that employment, under the eyes of the law, is not considered additional

---

[1] *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327, holds that continued employment for two years or more constitutes adequate consideration.

consideration. Further, the court noted that testimony evidenced that plaintiff was "a hot commodity," the greatest, the best, and he could sell anything, and thus, the court reasoned that there was no trial period needed for him. The court held:

"We're going to lay down this pretty much guideline of two years. And unless you come up with some other newfangled consideration that can chip away at that and take it outside of that two year margin, then it's not enforceable."

¶ 20    The trial court then held that "there's not adequate consideration in *Fifield*, and even if there was, I don't think that [defendant] has met the burden that's required, and it's a high burden, for injunctive relief." An order was entered on August 1, 2014, denying defendant's motion for injunctive relief. Defendant brings this interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1)(eff. Feb. 26, 2010). For the reasons that follow, we affirm.

¶ 21                                    ANALYSIS

¶ 22    Defendant contends that the trial court erred in determining that as a matter of law the agreement between the parties was unenforceable. Specifically, defendant asserts that the restrictive covenants in the agreement are enforceable because they are supported by adequate consideration.  He argues that the covenants were intended to prevent the unfair disclosure of confidential information by reasonably restricting plaintiff's postemployment activities after leaving defendant's employment for Woodstock. According to defendant, plaintiff was given ample consideration in exchange for his promise to abide by the restrictive covenants. Therefore, defendant maintains that the agreement is enforceable and the court erred in denying his motion for injunctive relief.

¶ 23    Plaintiff responds that under Illinois law, in order for restrictive covenants to be enforceable, employment must continue for a substantial period of time. He first points out

that Illinois courts have repeatedly held that two years of continued employment is adequate consideration to support restrictive covenants. Plaintiff acknowledges that our courts have also stated that other additional consideration can lessen that two-year continued employment requirement. However, because the consideration here consisted of his employment and he was only employed for 18 months, it is less than is needed to establish adequate consideration. Thus, plaintiff contends that the trial court did not err in finding the agreements unenforceable and in denying defendant's motion for preliminary injunction.

¶ 24 The following general principles apply to the issues presented in this appeal. The decision to grant or deny injunctive relief lies within the trial court's sound discretion and its findings will not be disturbed absent an abuse of discretion. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62-63 (2006). The enforceability of a restrictive covenant not to compete in an employment contract, however, is a question of law, the determination of which we review *de novo*. *Id.* at 63.

¶ 25 The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of the cause. *Beahringer v. Page*, 204 Ill. 2d 363, 379 (2003). It is an extraordinary remedy that should apply only in situations where an extreme emergency exists and serious harm would result if the injunction is not issued. *Id.* As a general rule, a preliminary injunction will only be granted where the plaintiff shows it (1) has a clearly ascertainable right that needs protection, (2) will suffer irreparable harm without the protection, (3) has no adequate remedy at law, and (4) is likely to succeed on the merits. *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399 (1993).

¶ 26 Illinois courts abhor restraints on trade. *Prairie Eye Center, Ltd. v. Butler*, 305 Ill. App. 3d 442, 445 (1999) (citing *Gillespie v. Carbondale & Marion Eye Centers, Ltd.*, 251 Ill. App.

3d 625, 626 (1993)). Postemployment restrictive covenants are carefully scrutinized by Illinois courts because they operate as partial restrictions on trade. *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327, ¶ 13 (citing *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 447 (2007)). In order for a restrictive covenant to be valid and enforceable, the terms of the covenant must be reasonable. *Prairie Eye Center, Ltd.*, 305 Ill. App. 3d at 445. It is established in Illinois that a restrictive covenant is reasonable only if the covenant (1) is no greater than is required for the protection of a legitimate business interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 17. The courts consider the unique factors and circumstances of the case when determining the reasonableness of a restrictive covenant. *Millard Maintenance Service Co. v. Bernero*, 207 Ill. App. 3d 736, 745 (1990). However, before even considering whether a restrictive covenant is reasonable, the court must make two determinations: (1) whether the restrictive covenant is ancillary to a valid contract; and (2) whether the restrictive covenant is supported by adequate consideration. *Fifield*, 2013 IL App (1st) 120327, ¶ 13 (citing *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 137 (1997)). Absent adequate consideration, a covenant, though otherwise reasonable, is not enforceable. *Id.* ¶ 14 (citing *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 728-29 (2008)); see also *Millard*, 207 Ill. App. 3d at 744.

¶ 27    As a general rule, courts do not inquire into the adequacy of consideration. *Prairie Rheumatology Associates v. S.C. v. Francis*, 2014 IL App (3d) 140338, ¶ 14 (citing *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945-46 (7th Cir. 1994)). However, postemployment restrictive covenants are excepted from the general rule. Adequacy of consideration is

analyzed in the context of postemployment restrictive covenants because it has been recognized that a promise of continued employment may be an illusory benefit where the employment is at-will. *Fifield*, 2013 IL App (1st) 120327, ¶ 14 (citing *Brown*, 379 Ill. App. 3d at 728). Under Illinois law, continued employment for a substantial period of time beyond the threat of discharge is sufficient consideration to support a restrictive covenant in an employment agreement. *Id.* Generally, our courts have held that continued employment for two years or more constitutes adequate consideration. *Id.* ¶ 19 (citing *Diederich Insurance Agency, LLC v. Smith*, 2011 IL App (5th) 100048, ¶ 15 and *Brown*, 379 Ill. App. 3d at 728-29).

¶ 28    Defendant contends that the trial court, in relying on this court's decision in *Fifield*, erred in determining that the agreement was unenforceable as a matter of law. He posits that this case presents a unique factual situation that requires application of a fact-specific approach in determining the adequacy of consideration.

¶ 29    Before proceeding further, we deem it appropriate to discuss the facts and the holding in *Fifield* as well as the trial court's application of relevant case law to the case at bar. In *Fifield*, the plaintiff had been employed by the subsidiary of an insurance company. *Id.* ¶ 3. In October 2009, the insurance company sold that subsidiary to Premier. *Id.* In late October, Premier offered the plaintiff continued employment if he signed an " 'Employee Confidentiality and Inventions Agreement,' " which included nonsolicitation and noncompetition provisions. *Id.* Three months later, on February 1, 2010, the plaintiff informed Premier that he was resigning, which he did. *Id.* ¶ 4. Shortly thereafter, the plaintiff began work with his new employer. *Id.* The plaintiff and his new employer brought a declaratory judgment action against Premier, claiming that the provisions of the

noncompetition and nonsolicitation agreement were unenforceable. *Id*. ¶ 5. Premier counterclaimed seeking injunctive relief. *Id*. The trial court granted the plaintiff's motion for declaratory relief. *Id*. ¶ 6.

¶ 30    On appeal, Premier argued that the trial court erred in declining to enforce the nonsolicitation and noncompetition provisions in the parties' agreement because there was adequate consideration. Premiere asserted that the consideration offered to the plaintiff was the employment itself; employment as the consideration enabled the plaintiff to avoid unemployment. *Id.* ¶ 9.

¶ 31    In its analysis, the appellate court noted that Illinois courts have repeatedly held that there must be at least two years or more of continued employment to constitute adequate consideration in support of a restrictive covenant. *Id.* ¶19. In affirming the trial court, the appellate court held that the period of time which the defendant had worked, slightly longer than three months, was "far short of the two years required for adequate consideration under Illinois law." *Id.*

¶ 32    *Fifield* is equally important for what it says and for what it does not. After noting that Illinois courts have held steadfastly to the notion of two years or more as constituting adequate consideration, the court concludes that the approximately three months of employment in that case was insufficient. Notably, the court had no occasion to consider whether there was consideration other than the employee's employment. Premier had stated that the employment was in fact the consideration. Further, we do not read *Fifield* as overruling or modifying *Brown*, which engaged in fact-specific approach in determining consideration. What *Fifield* clearly holds is that employment alone, which is of less than two

years duration, is inadequate consideration to support enforcement of a postemployment restrictive covenant.

¶ 33     In this case below, the trial court first set out the applicable law on the issue of enforcement of postemployment restrictive covenants. Expressly citing *Fifield*, the court noted that two years of employment is sufficient for adequate consideration. The court continued, noting that there could be other or additional factors that would override the two year-employment requirement. Those other factors, the court noted, could be an "added bonus in exchange for this restrictive covenant, more sick days, some incentives, some kind of newfangled compensation" that could be considered additional compensation that could support enforcement of the covenant. Although the court cited no particular Illinois cases in addition to *Fifield*, clear from the court's comments was that it considered other factors that might support a finding of adequate consideration in the absence of the two years' employment required not only by *Fifield*, but by those cases upon which *Fifield* relied. In any case, the trial court's reliance on *Fifield* was appropriate.

¶ 34     Later in his brief, defendant asserts that *Fifield* did not abolish the fact-specific approach taken by Illinois courts in determining the adequacy of consideration. He maintains that a court's review is not limited to application of a numerical formula in determining what constitutes substantial continued employment. In support, he invites this court's attention to *Woodfield Group, Inc. v. DeLisle*, 295 Ill. App. 3d 935 (1998), and to *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 743 (N.D. Ill. 2011), cases in which, he maintains, the courts considered whether a defendant was terminated or resigned voluntarily to be a critical distinction in the adequacy of consideration determination. Noting that *Woodfield Group* and *LKQ Corp.* predate *Fifield*, defendant additionally invites this court's attention to *Novas,*

*Dohr & Coll OB/Gyn Associates, S.C. v. Keith*, No. 13-CH-07568 (Cir. Ct. Cook Co.), a circuit court ruling, and to *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694 (N.D. Ill. 2014), [2] cases in which, defendant maintains, the courts engaged in a fact-specific approach and found sufficient consideration where employment had been for less than two years.

¶ 35 We agree with defendant that *Fifield* did not abolish a fact-specific approach to determining adequacy of consideration. Beyond the fact of employment, there were no other factors offered for the court in *Fifield* to consider. With respect to *Woodfield Group* and *LKQ Corp.*, defendant correctly points out that both cases predate our holding in *Fifield*. We point out that, while perhaps persuasive, we are not bound by the rulings of our circuit court or by the holdings of our sister federal courts. Further, although there is *dicta* in *Woodfield Group*, 295 Ill. App. 3d at 943, concerning the manner in which employment was terminated as a possible factor in the determination of adequate consideration, Illinois courts have since held that whether the former employee resigned or was terminated is irrelevant. See *Brown*, 379 Ill. App. 3d at 729; see also *Diederich*, 2011 IL App (5th) 100048, ¶ 15.

¶ 36 We additionally agree with defendant that the courts are not limited to a numerical formulation and we would further point out that the trial court here was not so limited. Had it been so, the court's analysis would have ended upon learning that the plaintiff's period of employment was for 18 months. Instead, the court engaged in a fact-specific approach to determine whether there was consideration, in addition to the 18 months employment, sufficient to enforce the covenant. We note in particular the court's comment that "because

---

[2] We note that there is a split among the federal district courts regarding the adequacy of consideration to support postemployment covenants not to compete. In *Montel Aetnastak Inc. v. Miessen*, 998 F. Supp. 2d 694 (N.D. Ill. 2014), the court found consideration adequate to support enforcement of a postemployment covenant where an employee worked for 15 months and voluntarily resigned. Accord *Cumulus Radio Corp. v. Olson*, No. 15-cv-1067, 2015 WL 643345 (C.D. Ill. Feb. 13, 2015); but see *Instant Technology, LLC. v. DeFazio*, 40 F. Supp. 3d 989 (N.D. Ill. 2014) (holding covenants unenforceable where employees were employed for less than two years and their employers had provided no additional compensation beyond employment in exchange for the covenants).

these things all have individual facts, individual circumstances, and the totality of the circumstances is definitely something the Court should look at, and as [a] matter of fact they're obligated to."

¶ 37    Defendant next contends that the trial court's interpretation of *Fifield* as requiring two years of continued employment before a restrictive covenant is enforceable, regardless of the circumstances, misconstrues the context in which *Fifield* was decided, broadly expands its scope and ignores Illinois precedent which supports a fact-specific approach.  In defendant's view, the trial court wrongly interpreted *Fifield* to hold that no amount of consideration provided for the signing of an employee agreement is adequate absent the employee working for the employer for two years.  Defendant misperceives the trial court's interpretation of *Fifield*.

¶ 38    Based upon our review of the record, we believe that the trial court's interpretation and application of *Fifield* to the facts in this case were appropriate. We reiterate, after first reviewing the general rules as set forth in *Fifield*, the court specifically commented that other consideration would take the case out of *Fifield*'s bright-line rule of two years' continued employment.  After considering all of the evidence, however, the court stated that it did not find other consideration.

¶ 39    Defendant argues that the situation addressed in *Fifield* and other similar cases, not cited by defendant, differ from the case at bar. In that regard, he points out that unlike the employee in *Fifield*, here, plaintiff was not an existing employee forced to sign an employment agreement under threat of termination, nor was he a new hire seeking to be employed for the first time.  Plaintiff was, instead, a former employee who voluntarily

resigned his position to accept a position with defendant's competitor and was subsequently rehired by plaintiff.

¶ 40    We agree that plaintiff was not an existing employee, but was more akin to a new employee.  The agreement here was offered as a condition of plaintiff's employment.  We find significant that language included in the agreement concerning consideration expressly stated: "[I]ncluded  in the mutual consideration acknowledged by the parties hereto, but without limitation, are an offer of employment with Company in an at-will employment relationship ***."  Even so, defendant's distinction here is without a difference. In *Fifield*, the defendant employer argued that because the employee was not employed by the defendant at the time he signed the agreement his employment was the consideration he received in exchange for the noncompetition agreement.  In addressing the defendant's argument, we found instructive the ruling in *Bires v. WalTom, LLC*, 662 F. Supp. 2d 1019, 1030 (N.D. Ill. 2009), which rejected the distinction between pre- and posthire covenants. *Fifield*, 2013 IL App (1st) 120327, ¶ 17.   We find no basis upon which to depart from the reasoning in *Fifield* on this issue and defendant offers none.

¶ 41    Regarding the adequacy of consideration, defendant points out that the agreement was drafted specifically to address plaintiff's situation, including his prior voluntary termination of employment to pursue employment with a competitor, and his desire to be rehired by defendant.  Additionally, defendant points out, plaintiff was immediately provided the perks and benefits afforded to top salesmen after being rehired and was not required to undergo the 90-day trial period that new hires at City Limits are required to complete.   Defendant maintains that the parties' agreement on specific restrictions in exchange for employment and the exposure to confidential information are all evidence of adequate consideration.  He urges

that based on the totality of the circumstances, applying a fact-specific approach, the consideration was adequate.

¶ 42     Plaintiff, on the other hand, contends that the evidence fails to establish sufficient consideration.  In support of his contention, plaintiff offers that other than continuation of his employment, he received no consideration in return for execution of the agreement. Further, plaintiff argues that his alleged exposure to confidential information or his access to leads or commissions based on his ability to sell motorcycles was no different than what existed before he was subject to the restrictive covenants. Plaintiff additionally argues that he was not paid any bonus, received no modifications to his commission structure, and received no additional days off or any other benefits in exchange for the restrictive covenants.  As corroboration, plaintiff invites our attention to Giglio's testimony wherein he testified that the essential terms of plaintiff's compensation did not change.  Plaintiff further offers that the 90-day trial period for new employees, which defendant claims it waived as additional consideration, was never discussed and, moreover, his proven track record belied the necessity for the trial period. Thus, plaintiff argues that the evidence demonstrates that plaintiff was a salesman selling a fungible product, who left work after 18 months' employment. Therefore, plaintiff maintains that his employment was of an insufficient duration to support the restrictive covenants.

¶ 43     Here, over the course of two days, the court heard evidence seeking to determine whether there were any facts that could constitute consideration beyond the fact of employment.  The court expressly noted that there were potentially two things that could constitute adequate consideration: forgiveness of the 90-day trial period for new employees and the fact that plaintiff was given back his job.  Referencing the parties' acknowledgement of the caliber of

plaintiff's salesmanship, the court determined that allowing plaintiff to forego the 90-day trial period did not equate to additional consideration. At the close of the evidence, the court concluded that the defendant failed to demonstrate the existence of any consideration beyond employment sufficient to qualify as additional consideration.

¶ 44        We find the facts and the court's analysis in *Brown* to be similar to the case at bar.  In *Brown*, 379 Ill. App. 3d 724, the defendant was employed as a customer service representative for her employer.  *Id.* at 726.  While employed, her employer was purchased by the plaintiff.  *Id.*  As a part of the purchase, the plaintiff required the defendant to sign an employment agreement, which contained a postemployment restrictive covenant.  *Id.*  The defendant signed the agreement, and seven months later she resigned and commenced work for one of the plaintiff's competitors.  The plaintiff filed a breach of contract claim, alleging that the defendant had breached the covenant.  The defendant filed and was granted a motion for summary judgment.  *Id.*  On appeal, this court held that there was not adequate consideration to support the covenants contained in the employment agreement.  Notably, the court reasoned that although the plaintiff claimed that the defendant received additional employee benefits as consideration for the restrictive covenant, there was no evidence to establish what the benefits were or how they differed from the benefits the defendant was already receiving.  *Id.* at 729. Accordingly, this court affirmed the trial court's judgment.  *Id.*

¶ 45        Defendant acknowledges that *Fifield* recognized that continued employment as consideration could be illusory in the context of at-will employment because the employer could fire the employee shortly after signing the covenant. *Fifield*, 2013 IL App (1st) 120327, ¶ 9. Further, defendant recognizes that courts have found that two years of continued employment will constitute adequate consideration and overcome the otherwise illusory

benefit of continued at-will employment. Defendant maintains that here, however, there was no such illusory benefit for plaintiff because of the additional consideration, in the form of sales leads and waiver of the 90-day trial period, and as such, plaintiff's 18 months of employment is sufficient to support the restrictive covenants.

¶ 46     Although defendant claims that plaintiff received additional employee benefits as consideration for the restrictive covenant, the trial court having heard the testimony of the witnesses and having reviewed the evidence presented at the hearing found otherwise. We agree with the trial court's findings. Thus, we conclude that the employment agreement is not supported by adequate consideration and the restrictive covenants are, therefore, unenforceable against plaintiff.

¶ 47     Defendant argues that the scope of *Fifield*'s holding should be limited to situations where no consideration is provided for the restrictive covenant beyond continued employment. As support, defendant cites to *Fifield*, 2013 IL App (1st) 120327, *Brown*, 379 Ill. App. 3d 724 and to *Curtis 1000*, 24 F.3d 941, as distinguishable from the case at bar "because in those cases, no consideration was provided for the existing employee to sign the restrictive covenant other than continued employment after the threat of discharge." Defendant offers that *Fifield* and *Brown* are additionally distinguishable from the case at bar because the employees in those cases worked for significantly shorter periods of time.

¶ 48     Defendant apparently overlooks the trial court's finding here that there was no additional consideration beyond the promise of employment. Thus, the cases cited by defendant, including *Fifield*, support the trial court's ruling.

¶ 49     Having determined that there was inadequate consideration to support enforcement of the postemployment covenant, we need not assess the reasonableness of the covenant. See

*Fifield*, 2013 IL App (1st) 120327, ¶ 13; see also *Prairie Rheumatology Associates*, 2014 IL App (3d) 140338, ¶ 19.

¶ 50                                                                 CONCLUSION

¶ 51        Because there was inadequate consideration, the postemployment restrictive covenants against plaintiff are unenforceable as a matter of law. Thus, defendant is unable to demonstrate the likelihood of succeeding on the merits. Therefore, the trial court did not abuse its discretion in denying defendant's motion for preliminary injunction.

¶ 52        For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 53        Affirmed.

¶ 54        JUSTICE ELLIS, dissenting.

¶ 55        I respectfully dissent. I understand that the majority attempts to apply existing law to the facts of this case. I simply disagree as to what that existing law is, and I disagree that we should follow it, in any event. I do not believe that a *per se* rule exists in Illinois, requiring that an at-will employee remain employed for at least two years—not one day less—after signing a restrictive covenant before sufficient consideration is found to exist. Nor do I believe that a bright-line, two-year rule is warranted. I also believe that the circumstances under which plaintiff left employment—whether he left voluntarily or was fired—are relevant to the determination. Cases like these are inherently fact-specific, and I do not believe that this area of the law is the place for bright-line rules that remove relevant facts from consideration.

¶ 56        I would analyze the adequacy of consideration on a case-by-case basis, taking into account the amount of time plaintiff worked postcovenant, the circumstances under which plaintiff left the job, as well as any other relevant factors in the totality of the circumstances.

In this case, given that plaintiff worked postcovenant for what I consider to be a substantial amount of time—18 months—and given that he left of his own accord, I would find that sufficient consideration exists for the restrictive covenant in this case. I would reverse the trial court's ruling and remand for consideration of the remainder of the analysis governing restrictive covenants.

¶ 57                          I. Whether a Bright-Line Rule Exists Under Illinois Law

¶ 58        I agree with the majority that, under Illinois law, an employee must remain employed for a " 'substantial period of time' " following the signing of a restrictive covenant before a court will find that covenant supported by sufficient consideration. *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327, ¶ 14 (quoting *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 728 (2008)). I just do not see why that "substantial period of time" must be two years, and not one day less, in every single case, regardless of the circumstances. Under the bright-line test the majority applies, had plaintiff worked for 1 year and 364 days before voluntarily resigning, the covenant would be unenforceable for want of consideration (unless there was some other, additional consideration like a bonus or more vacation time), but had he worked one more day, consideration for the covenant would be sufficient.

¶ 59        Our supreme court has never suggested that a bright-line rule applies here. Nor does any statute that we are compelled to follow. At best, I believe that the law from our appellate court on this topic is unclear. In any event, I find nothing about the time period of 2 years, versus 20 months or 30 months or any other time period, that demands that we carve it into law as a bright-line, dispositive time period.

¶ 60        I do agree that "[g]enerally, Illinois courts have held that continued employment for two years or more constitutes adequate consideration." *Id.* But that is not a bright-line rule; that is

merely an accurate summary of prevailing law. That is to say, two years has generally been deemed sufficient to constitute adequate consideration in this context. See, *e.g.*, *McRand, Inc. v. Van Beelen*, 138 Ill. App. 3d 1045, 1056 (1985) (two years of postcovenant employment was sufficient consideration); *Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill. App. 3d 151, 163 (1986) (four years of postcovenant employment held sufficient).

¶ 61   But saying that courts have generally found two years of postcovenant employment to be sufficient is very different than saying that anything *less* than two years is *automatically insufficient*. See *Fifield*, 2013 IL App (1st) 120327, ¶ 19. The point of requiring adequate consideration for a restrictive covenant—in the form of continued employment thereafter for a substantial period of time—is to prevent an employer from locking an at-will employee into a restrictive covenant and then firing that employee shortly thereafter, rendering the consideration of future employment "illusory." See *Brown*, 379 Ill. App. 3d at 728; *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 946 (7th Cir. 1994); *Cumulus Radio Corp. v. Olson*, No. 15-cv-1067, 2015 WL 643345, at *5 (C.D. Ill. Feb. 13, 2015). That rule makes perfect sense. An employer should not be able to prevent its competitors from hiring a valuable employee by hiring that employee itself, locking him or her into a restrictive covenant, and then firing him or her soon thereafter, leaving that employee unable to work for either that employer or its competitor. Courts have generally found that an employee's continued employment for two years postcovenant is a sufficiently long time to alleviate that concern. Generally speaking, that does not strike me as unreasonable. Two years is a long time to remain employed at a job, and probably long enough to show that the employer was not merely playing games with a competitor. But 23 months is a long time, too. So is 18 months, the amount of time plaintiff in this case worked for defendant before quitting the second time. Simply put, there is

nothing particularly significant about the term of 24 months that should elevate it to a *per se* minimum requirement.

¶ 62    Nor, in my opinion, does the case law compel that result. The majority relies on *Fifield*. I do believe that *Fifield* was correctly decided, in that the court there found that three months of postcovenant employment constituted insufficient consideration to support the covenant. *Fifield*, 2013 IL App (1st) 120327, ¶ 19. I would extend *Fifield* no further.

¶ 63    I recognize that the court in *Fifield* wrote that "Illinois courts have repeatedly held that there must be at least two years or more of continued employment to constitute adequate consideration in support of a restrictive covenant." *Id*. As I read that language, the court was not announcing a new rule after weighing its pros and cons—instead, it was citing case law that, in its view, had already created a rule. But I do not believe that the cases on which it relied supported that proposition. In *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 138 (1997), the employee worked from June 1989 to November 1991, well over two years after signing the restrictive covenant; the court simply held that this 2 ½ year period of time constituted sufficient consideration. The court never suggested that two years was a mandatory minimum. In support, *Lawrence* cited to *Agrimerica, Inc. v. Mathes*, 199 Ill. App. 3d 435, 442 (1990), which likewise held that "more than two years of continued employment constituted sufficient consideration." *Lawrence*, 292 Ill. App. 3d at 138 (discussing *Agrimerica*). The second case on which *Fifield* relied, *Brown & Brown*, 379 Ill. App. 3d at 729, merely held that, where the employee worked approximately seven months after signing the restrictive covenant, the covenant lacked consideration. *Brown & Brown* noted the prevailing view that "Illinois courts have generally held that two years or more of continued employment constitutes adequate consideration" (*id*.

at 728-29) but never suggested that anything less than two years was automatically *in*adequate.

¶ 64        The final case on which *Fifield* relied was *Diederich Insurance Agency, LLC v. Smith*, 2011 IL App (5th) 100048. There, the court found that three months of continued employment after signing the restrictive covenant was insufficient consideration. *Id*. ¶ 15. It is true that the court wrote that "in general, there must be at least two years or more of continued employment to constitute adequate consideration." *Id*. But on closer scrutiny, not even that language supports a bright-line test. First, the use of the phrase "in general" does not suggest a *per se* rule but merely a general principle. Second, in support of that statement of the law, *Diederich* relied on *Lawrence*, which, as described above, did not hold anything other than a period of postcovenant employment of more than two years was adequate consideration for the covenant. *Diederich*'s citation to *Lawrence*, for the proposition that a mandatory two-year employment period is required—or rather "generally" required—was simply a misstatement of the holding in *Lawrence*.

¶ 65        *Diederich* also cited *Mid-Town Petroleum, Inc. v. Gowen*, 243 Ill. App. 3d 63 (1993), where the employee's postcovenant employment lasted seven months. *Mid-Town* did not hold that a bright-line, two-year rule applied, either. It did not articulate any test. In fact, it held that whether the consideration was sufficient was a "question of fact" (*id*. at 71) properly resolved in the negative by the trial court.

¶ 66        None of these cases, in my view, supports the application of a bright-line, minimally necessary period of two years of postcovenant employment before consideration can be deemed sufficient. Nor, for that matter, was such a bright-line rule necessary to the outcome of any of those cases. In the two cases that have specifically mentioned the two-year period

as a mandatory minimum amount of time for postcovenant employment—*Fifield* did so explicitly and *Diederich* called it a "general" rule—the employees worked approximately three months after signing their restrictive covenants. *Diederich*, 2011 IL App (5th) 100048, ¶ 15; *Fifield*, 2013 IL App (1st) 120327, ¶ 19 ("slightly longer than three months"). That amount of time fell far short of any possible articulation of a "substantial period of time" required by the case law. Likewise, *Brown & Brown* and *Mid-Town* both involved postcovenant employment periods that spanned only seven months. *Brown & Brown*, 379 Ill. App. 3d at 729; *Mid-Town*, 243 Ill. App. 3d at 71. Determining whether two years was a mandatory minimum amount of time never needed to factor into the analysis in those cases.

¶ 67 It is also worth noting that, while decisions of federal courts applying Illinois law do not bind us, several federal district court decisions have recently struggled with this very question, whether this two-year, bright-line rule exists in Illinois for postcovenant employment. The duty of a federal court considering an Illinois state-law claim is to follow Illinois Supreme Court precedent on the issue or, in the absence of a supreme court case on point, to make a "predictive judgment" based on prevailing appellate court case law as to how the supreme court would rule.(Internal quotation marks omitted.) *Cumulus*, 2015 WL 643345, at *4; see also *Bankers Life & Casualty Co. v. Miller*, No. 14-cv-3165, 2015 WL 515965, at *3 (N.D. Ill. Feb. 6, 2015). In three of the four federal court decisions recently applying Illinois law on this subject, the court has determined that the Illinois Supreme Court would *not* adopt this bright-line rule. See *Cumulus*, 2015 WL 643345, at *4-7 (restrictive covenant supported by sufficient consideration where employee worked for 21 months postcovenant); *Bankers Life*, 2015 WL 515965, at *3-4 (length of employees' postcovenant employment not specified, but less than two years; court refused to reject covenants for lack

of consideration); *Montel Aetnastak. Inc. v. Miessen*, 998 F. Supp. 2d 694, 716 (N.D. Ill. 2014) (employment for 15 months postcovenant constituted sufficient consideration). The court in *Montel* refused to apply the bright-line rule "[g]iven the contradictory holdings of the lower Illinois courts." *Id.* Another federal court sharply criticized the bright-line rule as an "overprotective" rule that "risks making post-employment restrictive covenants illusory." *Cumulus*, 2015 WL 643345, at *4. The third reasoned that the bright-line rule found in *Fifield* was *dicta*, not the holding of the case, and that such a "rigid" rule would not be accepted by the Illinois Supreme Court. *Bankers Life*, 2015 WL 515965, at *4.

¶ 68    As the majority notes, one federal district court case recently found that the bright-line rule did exist under Illinois law. *Instant Technology, LLC v. DeFazio*, 40 F. Supp. 3d 989 (N.D. Ill. 2014). I do not find that decision persuasive because its reasoning consisted of nothing more than the court's citation to *Fifield* and the three cases on which it relied, *Lawrence*, *Brown & Brown*, and *Diederich*, none of which, as detailed above, supported that broad proposition. That decision stands in stark contrast to *Cumulus* and *Bankers Life*, each of which carefully considered the reasoning behind the bright-line rule and rejected it, before then concluding that the Illinois Supreme Court would reject it, too.

¶ 69    In my review of the case law, I have seen no case that has explained *why* two years should or must be a mandatory minimum amount of time. None of the cases cited by *Fifield* did. Nor did *Fifield*, which merely cited to case law that, in its view, had already set forth a rule. I do not believe that such a rule is defensible. We should not follow it simply because language to that effect was found in one appellate court decision out of dozens on this issue, especially when that language was not essential to its ultimate holding.

¶ 70        It is also worth nothing that, while our supreme court has not addressed the issue before us, it did comment on another part of the restrictive-covenant analysis—whether the terms of a covenant are reasonable—and in that context, affirmatively rejected a rigid, bright-line test in favor of a case-by-case analysis. See *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871. In *Arredondo*, the supreme court overruled appellate decisions that had applied a more rigid formula than the supreme court's three-pronged "rule of reason" test. The court reemphasized its commitment to the three-pronged test, "grounded in the totality of the circumstances." *Id*. ¶ 42. I believe that, if confronted with the question before us today, the supreme court would likewise eschew a bright-line test for adequate consideration in favor of a more flexible case-by-case determination, considering the totality of the circumstances.

¶ 71        The supreme court in *Arredondo* noted that the appellate courts had taken various language from its previous holdings to formulate a more rigid analysis but cautioned the courts from reading too much into the language of those previous supreme court holdings: "The understandable temptation is to view exemplary facts presented in particular cases as the outermost boundary of the inquiry. *** However, if it were possible to make a complete list today, human ingenuity would render the list obsolete tomorrow. [Citation.]" (Internal quotation marks omitted.) *Id*. ¶ 40. I believe that this has happened with regard to the issue before us today. Our appellate courts have taken "exemplary facts"—cases where the postcovenant employment was two years or greater, and found to constitute adequate consideration—and elevated the period of two years to the "outermost boundary of the inquiry."

¶ 72                        II. "Additional Consideration" for the Covenant

¶ 73  The majority argues that it is not limiting its analysis of consideration to a numerical formula, because defendant was free to show that plaintiff received other consideration, beyond the mere fact of continued employment for 18 months. First, I disagree that this is a departure from a bright-line rule. The majority is still holding that anything less than two years is not enough by itself, in any case, regardless of the circumstances, to constitute sufficient consideration.

¶ 74  I also question the concept of "additional consideration" in the context of a newly hired employee, like plaintiff in this case, as opposed to an existing employee presented with a restrictive covenant. I do not see what, beyond employment and whatever terms accompany it, a new hire could receive as "additional consideration." For an *existing* employee presented with a restrictive covenant, it is not hard to imagine what consideration the employee might receive in exchange for signing the covenant: a bonus, a raise, a promotion, more vacation or sick time, etc. In *Brown & Brown*, 379 Ill. App. 3d at 729, for example, the employee had worked for five years at the company before signing the restrictive covenant at the request of the company's new owners. Thus, after concluding that seven months of postcovenant employment was insufficient by itself to constitute adequate consideration for the covenant, the court proceeded to inquire as to whether any additional consideration was present—the company claimed the employee had been provided "additional benefits"—but the court ultimately found that the company failed to establish what those benefits were "with specificity." *Id*. That analysis made sense, because the employee was an existing employee, with a preexisting salary and benefits and responsibilities and terms of employment that could be improved upon.

¶ 75     But a new hire? When new employees are hired, they get what they get. The salary is whatever they are offered. The vacation time is whatever they are given. The job they are offered is the job they are offered. There is no such thing as a "raise" when the individual did not have a salary in the first place. They cannot be given "more" vacation time when they did not have vacation time at all. They cannot be promoted from a position they do not presently hold.

¶ 76     The majority agrees that plaintiff was a newly hired employee at the time he signed the restrictive covenant. Though plaintiff had previously worked for defendant, he quit, and then he returned and asked for his job back. At the time he returned—at the time he signed the covenant in exchange for getting back his job—he had no salary, he had no benefits, he had no vacation or sick leave. In this case, I cannot imagine what possible "additional consideration" plaintiff could have been given beyond employment for a substantial period of time, and whatever terms and benefits accompanied that employment.

¶ 77     I simply do not see what the concept of "additional consideration" could mean when an employee is newly hired and signs the restrictive covenant at the time of hiring, as did plaintiff here. I do not see how this concept contributes to the analysis of the adequacy of consideration.

¶ 78                         III. The Terms of the Employee's Departure

¶ 79     Consistent with my argument that analysis of this issue should be based on the totality of the circumstances on a case-by-case basis, I also believe that whether an employee leaves voluntarily or involuntarily should be part of the calculus. We necessarily analyze the adequacy of consideration in hindsight, looking at how long the employee worked. I do not understand why we would not also consider the reason for the employee's departure. Here

again, I prefer a more flexible, factually based analysis over yet another bright-line rule—that the reason for the employee's departure is utterly irrelevant, every time.

¶ 80    I acknowledge that there is case law holding that whether the employee resigns or is fired is irrelevant. *Fifield* said it, citing to *Diederich* and *Brown & Brown*. *Fifield*, 2013 IL App (1st) 120327, ¶ 19.  *Diederich* and *Brown & Brown* said it, citing to *Mid-Town*. *Diederich*, 2011 IL App (5th) 100048, ¶ 15; *Brown & Brown*, 379 Ill. App. 3d at 729.

¶ 81    But *Mid-Town* did not so hold. In *Mid-Town*, the employee had worked for the company for approximately 15 years before being presented with a restrictive covenant. The trial court specifically found that, in exchange for signing that covenant, the employee was offered a promotion from sales representative to sales manager, a promotion that allowed him to report directly to the Chief Executive Officer (CEO). *Mid-Town*, 243 Ill. App. 3d at 70. The appellate court agreed with the trial court that the employee "would not have continued employment without the offer to become sales manager." *Id*. at 71. But then the company reneged on the deal. Within six or seven months, the company changed the employee's job description, such that the employee "would no longer be reporting as sales manager to the CEO." *Id*. at 70. The employee quit the next day. *Id*. Without this additional consideration of a job promotion, the court was left with nothing more in terms of consideration for the covenant than the employee's continued employment for approximately seven months, which it found insufficient. *Id*. at 71.

¶ 82    *Mid-Town* does not stand for the proposition that whether the employee is fired or leaves voluntarily is irrelevant to the determination of adequate consideration. The consideration there was inadequate, but not because the employee left. It was inadequate because the company reneged on it. In other words, the consideration did not fail because the employee

quit; the employee quit because the consideration failed. See *Brown & Brown*, 379 Ill. App. 3d at 730-31 (Schmidt, J., dissenting); *Cumulus*, 2015 WL 643345, at *5 (finding that *Mid-Town* does not stand for proposition that circumstances of employee's departure are irrelevant).

¶ 83 Again, as with my objection relating to the bright-line, two-year rule, I have read no Illinois decision that explained *why* the reason for an employee's departure should be irrelevant in every single case. I think it should be a relevant consideration. If the employee left of his or her own accord after a lengthy stay on the job, there is no basis to believe that the employer's promise of employment was "illusory" or insincere or fraudulent. One could conceive of a fact pattern where an employer constructively discharged an employee—made life for that employee so unpleasant that a voluntary resignation was not so voluntary—but again, that would be a factor thrown in the mix of relevant considerations for a court to determine on a case-by-case basis.

¶ 84 This one-two punch of bright-line rules—holding that two years of continued employment is a mandatory minimum, and refusing to consider the circumstances surrounding the employee's departure—is problematic not only because it fails to take into account individual circumstances of a particular case, but also because it does not promote good public policy. Again, the purpose behind requiring adequate consideration when an at-will employee signs a restrictive covenant is to prevent unfair gamesmanship—to stop an employer from using it to prevent an employee from working for a competitor, by locking that employee into a covenant not to compete and then terminating that employee. To say it another way, the requirement of adequate consideration protects at-will employees from the whim of the employer.

¶ 85    But setting a bright-line time period of two years' continued employment, and paying no attention to whether the employee voluntarily resigned, creates the same problem in reverse. Under these automatic rules, " 'an employee can void the consideration for any restrictive covenant by simply quitting for any reason' " within the first two years, thereby rendering " 'all restrictive covenants illusory in [Illinois]' " because they would be " 'voidable at the whim of the employee.' " *Id.* (quoting *Brown & Brown*, 379 Ill. App. 3d at 730 (Schmidt, J., dissenting)).

¶ 86    I prefer an analysis that gives neither party an automatic upper hand. If we were to require adequate consideration in the form of continued employment for a substantial period of time, without defining in a bright-line way what that substantial period of time must be, and if we took into account the circumstances of the employee's departure, we would not put the employee's fate at the whim of the employer, nor the employer's fate at the whim of the employee.

¶ 87    It is undisputed that plaintiff here continued employment with defendant for 18 months after signing the restrictive covenant upon his re-hiring. He left of his own accord, joining defendant's competitor. I see nothing in these facts that suggest the defendant's promise of future employment was "illusory" or in any way insincere, and I believe that 18 months is a substantial period of time. I would therefore hold that there was sufficient consideration for the restrictive covenant in this case. I would reverse the trial court's ruling and remand it for further proceedings regarding the restrictive covenant, namely whether the covenant's terms were "reasonable" under Illinois law.